BYRNES, Chief Judge.
Defendant Joseph Jackson was charged by bill of information on March 17, 2000, with possession of cocaine in violation of La. R.S. 40:967. Defendant pleaded not guilty at his March 22, 2000, arraignment. After a hearing on July 24, 2000, the trial court denied the defendant’s motion to suppress the evidence. That same day the bill of information was amended to charge the defendant with the greater offense of possession with the intent to distribute cocaine. On December 7, 2000, a twelve-member jury found Jackson'guilty of attempted possession with the intent to distribute.[1] On December 18, 2000, the trial court sentenced Jackson to two years imprisonment at hard labor and to a fine of $2,233, which was the amount seized from the defendant at the time of his arrest. At that time the trial court granted Jackson’s motion for appeal.
*142 | {¡Pursuant to a multiple bill the defendant was re-sentenced as a triple offender on April 27, 2001, to two years at hard labor with credit for time served. The trial court recommended the defendant, Joseph Jackson, to the Orleans Parish Boot Camp Program.

Statement of Fact

Officer Travis McCabe of the New Orleans Police Department testified that on February 4, 2000, about 11:00 p.m., he, Officer Eric Gillard and Officer Tommy Felix approached the intersection of Second and South Johnson Streets, and observed a group of young men loitering on the steps of an abandoned house. Upon seeing them approach, Joseph Jackson stepped away from the others and tossed an object over a fence. The officers secured Joseph Jackson and the other men with him, and Officer McCabe retrieved the object tossed by Joseph Jackson. The object was a plastic bag that contained white rock-like objects Officer McCabe believed to be crack cocaine.
Officer Eric Gillard testified that he was with Officer McCabe on the night of Jackson’s arrest, and that he saw Joseph Jackson and four other men on the porch of an abandoned house. Officer Gillard further testified that he also saw Joseph Jackson toss an object over a fence upon their approach. During a weapons pat-down, Officer Gillard found Joseph Jackson to be in possession of two thousand, two hundred thirty-three dollars.
Jason Madonia, the Assistant District Manager for Fast Tax Service in New Orleans, testified that his office issued two checks to Joseph Jackson.
| aSteven Jackson testified that he lived in the neighborhood near the intersection of Second and South Johnson Streets. He was “hanging out” with Joseph Jackson on the night of his arrest, and they were planning to go to a club. Steven Jackson testified that when the officers arrived, they immediately detained everyone while Officer McCabe searched an alley. Steven Jackson further testified that at no time did he see the defendant, Joseph Jackson, discard anything over a fence.
Derrick Fleming testified that he was also with Joseph Jackson on the night of his arrest, and at no time did he see the defendant discard an object. Fleming further testified that Officer McCabe searched an alley as well as Joseph Jackson’s vehicle.
Jacqueline Williams testified corroborating the testimony of Steven Jackson and Derrick Fleming.

Motion to Suppress

The defendant, Joseph Jackson, complains that it was error for the trial court to deny his motion to suppress the evidence.
The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914.
La.C.Cr.P. art. 215.1 provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and demand of him his name, address, and an explanation of his actions.
This court in State v. Anderson, 96-0810, p. 2 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, 106, noted:
|4A police officer has the right to stop a person and investigate conduct when he has a reasonable suspicion that the person is, has been, or is about to be engaged in criminal conduct. Reasonable suspicion for an investigatory stop is *143 something less than probable cause; and, it must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual’s right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. An investigative stop must be justified by some objective manifestation that the person stopped is or is about to be engaged in criminal activity or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. (Citations omitted.)
Louisiana’s Constitution in Art. 1, Section 5, provides in part:
Every person shall be secure in his person, property, communications, houses papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose for the search.
In State v. Tucker, 626 So.2d 707, 710 (La.1993), the Louisiana Supreme Court noted in an effort to discourage police misconduct, evidence recovered as a result of an unconstitutional search or seizure is inadmissible. If, however, a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen’s right to be free from governmental interferences, then the property may be seized and used against the citizen in a resulting prosecution. In this latter case, the citizen has no expectation of privacy.
“It is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the right to 1 sbe left alone is violated, thereby rendering unlawful any resultant seizure of abandoned property.” Tucker, id, citing State v. Belton, 441 So.2d 1195, 1199. In Tucker the Court gave factors to determine whether an actual stop of an individual is imminent: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
In the present case testimony at the motion hearing and trial revealed that the three arresting officers approached the defendant and the other four men with him in one vehicle. It was approximately 11:00 p.m. when, from the vehicle, the officers observed the defendant separate himself from the group of young men loitering in front of an abandoned house, and throw something over a fence and return to the group. The officers were driving down a one-way street with parked cars on both sides of the street.
The object was discarded by the defendant without police interference, and therefore, the officers could retrieve it. The defendant had no expectation of privacy. The abandonment gave the officers reasonable suspicion, sufficient articulable knowledge of particular facts and circumstances, to justify detaining the defendant. State v. Anderson, 96-0810 p. 2 (La.App. 4 Cir. 5/21/97), 696 So.2d 105, 106. Once the object was retrieved, and it appeared to be crack cocaine, the officers had probable cause to arrest and facts and circumstances within their knowledge based on | fireasonable and trustworthy information to justify a belief that the defendant had *144 committed a crime. Gibson v. State, 99-1730, p. 7 (La.4/11/00), 758 So.2d 782, 788. Additionally, the money was seized from the defendant pursuant to his arrest. State v. Thomas, 310 So.2d 517, 521.
The trial court did not err in denying the defendant’s motion to suppress.

Error Patent

A review of the record for errors patent reveals the trial court erred in the sentenee it imposed upon Joseph Jackson. The trial court imposed a two-year sentence on the defendant for a conviction of attempted possession of cocaine with the intent to distribute, as a third offender. However, the trial court erred by failing to sentence the defendant to life as a third felony offender without benefit of parole, probation, or suspension of sentence. La. R.S. 40:967 B(4)(b).[2]
|7Pursuant to La.C.Cr.P. art. 882 A, a illegally lenient sentence can be noticed or *145 recognized by the appellate court sua sponte without the issue being raised by the State in State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790. Williams retroactively overrules State v. Jackson, 452 So.2d 682 (La.1984) and its progeny, including State v. Fraser, 484 So.2d 122 (La.1986).[3] In reference to La. R.S. 15:301.1,[4] the Louisiana Supreme Court stated that: “When an illegal sentence is corrected, even though the corrected sentence is more onerous, there is no violation of the defendant’s constitutional rights.” Id., 800 So.2d at 798. The Louisiana Supreme Court found that:
Viewing these statutory provisions in light of the defendant’s due process rights and his recognized right in Louisiana to seek appellate review of his conviction, we find no impediment to the Legislature’s statement that La.Rev. Stat. Ann. 15:301.1 was enacted to change the law in State v. Jackson and its progeny. No portion of La.Rev.Stat. Ann. § 15:301.1 conflicts with a constitutional principle to which the legislative enactment must yield. Paragraphs A, B, and C of La.Rev.Stat. Ann. § 15:301.1 simply provide for correction of illegally lenient sentences and neither increase a *146 defendant’s sentencing exposure nor increase a legal sentence. Accordingly, we find that the provisions of this legislative enactment do not impede the defendant’s constitutional right to appeal. Id., 800 So.2d at 799-800.
The Louisiana Supreme Court stated:
[T]his paragraph [La.R.S. 15:301.1(A) ] self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure 19of the sentencing court to impose punishment in conformity with that provided in the statute.
Id., 800 So.2d at 799.
However, the Supreme Court explained:
... As noted earlier, we recognized that this provision [La. R.S. 15:301.1] directs that sentences that require statutory restrictions on parole, or suspension of sentence are “deemed to contain [those] provisions,” ... whether or not the sentencing court pronounces those restrictions at the time of initial sentencing. It is clear from the statutory language that this proviso is self-activated, eliminates the remand for ministerial correction of sentence, and requires no notice to the defendant. Simply stated, the provisions of Paragraphs A and C [of La. R.S. 15:301.1] do not call for amendment as no correction is required. Rather, that which was legislatively mandated at the time of sentencing is recognized as having existed statutorily without pronouncement being necessary. Accordingly, we find it was appropriate for the appellate court in the present case to so note that “[a]t least six months of the [defendant’s] sentence of imprisonment imposed shall be with or without benefit of probation, parole, or suspension of sentence.” La.Rev.Stat. Ann. § 14:98(D)(1). However, because of the complete failure of the sentencing court to abide by any of the sentencing requirements of La.Rev.Stat. Ann. § 14:98(D)(1) and because an element of sentencing discretion existed as regards the length of sentence served without benefit of parole, probation, or suspension of sentence, it was necessary for the appellate court to remand the matter to the trial court for re-sentencing. [Emphasis added.]
Id., 800 So.2d at 801.
Also, the Louisiana Supreme Court noted:
... the authority of the appellate court to recognize sentencing error arises in part from the self-activating provisions of La.Rev.Stat. Ann. § 15:301.1(A) (i.e., the failure to impose sentence without benefit of parole, probation, or suspension of sentence) and under the general provisions of La.Code Crim. Proc. Ann. art. 882 (the sentencing | ¶ nerrors other than those which fall under La.Rev.Stat. Ann. § 15:301.1(A)). Under the provisions of article 882, “[a]n illegal sentence may be corrected at any time by ... an appellate court on review.” ... [Emphasis added.]
Id., 800 So.2d at 802.
In footnote 6, the Louisiana Supreme Court referred to State ex rel. Pierre v. Maggio, 445 So.2d 425 (La.1984), and remarked that:
State ex rel. Pierre v. Maggio, ... has little application, if any, to the present case. The Pierre decision prohibited the Department of Public Safety and Corrections (“DOC”) from interpreting terms and conditions of imprisonment. Thus, when a trial court omitted parole restrictions in the pronouncement of sentence for a crime the penalty of which carried parole restrictions, under Pierre, the DOC records had to track *147 the sentence imposed, for the “custodian’s obligation is to see that the sentence imposed is the sentence served.” Id. at 425. Under La.Rev.Stat. Ann. § 15:301.1, DOC may safely determine an inmate’s parole eligibility by reference to the statute under which sentence was imposed.
Id. 800 So.2d at 797.
In his concurrence, Justice Pro Tempore Lobrano asserted that: “The majority also correctly finds that the sua sponte correction of an illegal sentence by an appellate court violates no constitutional provisions simply because no one has a constitutional right to an illegal sentence.” Id., 800 So.2d at 803. The appellate court may recognize an error without remand where there is no element of sentencing discretion as stated in Williams, id. As previously noted above, under the circumstances in Williams, the Louisiana Supreme Court remanded the case for resen-tencing because of the complete failure of the sentencing court to abide by any of the sentencing requirements of La. R.S. 14:98(D)(1) and because an element of sentencing discretion existed as regards the length of sentence served without benefit of Inparole, probation, or suspension of sentence, it was necessary for the appellate court to remand the matter to the trial court for re-sentencing.
In the present case, Joseph Jackson pleaded guilty to his prior offense of possession with intent to distribute crack cocaine on March 26, 1992. He also was found guilty to the prior offense of attempted possession of cocaine on November 14, 1990. Joseph Jackson was found guilty of attempted possession with intent to distribute cocaine on December 7, 2000. The trial court sentenced Joseph Jackson to two years in the Department of Corrections, recommended Orleans Parish Prison Boot Camp Program, and fined the defendant in the amount of $2,233, the amount of money seized from the defendant at the time of his arrest.
The trial court noted that Joseph Jackson pleaded guilty of being a third offender under La. R.S. 15:529.1 on April 27, 2001. During sentencing, Joseph Jackson agreed that he understood that “the sentencing range as a multiple offender in this case is from 20 months to five years in the Department of Corrections.” The trial court sentenced Joseph Jackson to two years in the Department of Corrections with credit for time served. The trial court did not give Joseph Jackson, as a third felony offender, the mandatory life sentence without the benefit of parole, probation or suspension of sentence.
In the present case, the record, including the sentencing transcript, does not show that the trial court followed the sentencing requirements of La.C.Cr.P. Art. 894.1.[5] An element of sentencing dis *148 cretion existed as |12regards the length of sentence served without benefit of parole, probation, or suspension of sentence, if the trial court finds that the minimum sentence is unconstitutional with respect to this particular defendant, it is necessary for the reviewing court to remand the matter to the trial court for re-sentencing.
Further, In State v. Lacoste, 97-1113 (La.App. 4 Cir. 5/28/97), 695 So.2d 1121, this court held that a defendant who pleaded guilty to a charge of possession of crack cocaine with the understanding that he would receive a sentence of only ten years, despite being charged as a triple offender, was entitled to the opportunity to withdraw his plea prior to imposition of a greater sentence after it was determined on appeal that the ten-year sentence was not adequately supported.
In the present case Joseph Jackson pleaded guilty to being a third offender, and the trial court informed the defendant that he could be sentenced from 20 months to five years in the Department of Corrections. This is also reflected on Joseph Jackson’s guilty plea form. The defendant relied on a plea bargain agreement. The trial court should give Joseph Jackson the opportunity to withdraw his guilty plea if his sentence is not in compliance within the sentence range acknowledged that he would receive if he pleaded guilty to the multiple bill.
| ^Accordingly, Joseph Jackson’s conviction is affirmed. The matter is remanded to the trial court to comply with the requirements of La.C.Cr.P. Art. 894.1 or to impose the minimum mandatory sentence. The trial court should give Joseph Jackson the opportunity to withdraw his guilty plea if the sentence does not comply with the sentence range that he acknowledged when he entered his guilty plea to the multiple bill.

CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.

JONES, J., concurs with reasons.

. There is a discrepancy between the minute entry of December 7, 2000, and the trial transcript. The minute entry states the defendant was found guilty of attempted possession. The December 7, 2000, trial transcript states the defendant was found guilty of attempted possession with intent to distribute.
According to the docket master and the December 18, 2000 minute entry, the trial court sentenced Joseph Jackson to two (2) years to the Department of Corrections without the benefit of parole, probation or suspension sentence with credit for time served and without mentioning a fine. The trial court recommended the Orleans Parish Boot Camp Program.
However, the December 18, 2000 sentencing transcript shows that the trial court did not include the two-year sentence to be served without the benefit of parole, probation, or suspension of sentence. The trial court did not give credit for time served. The sentencing transcript does note a fine of $2,333. At the time of the original sentencing, on December 18, 2000, the transcript shows that the trial court referred to attempted possession with intent to distribute. The December 20, 2000 minute entry states that the Collections Department received from the property room the sum of $2,233, which was applied to the defendant's judicial expense fund fine as ordered by the trial court.
When there is a conflict between the minute entry and transcript, the transcript is controlling. State v. Pleasant, 541 So.2d 401 (La. App. 4 Cir. 1989).

. La. R.S. 40:967B, the applicable statute existing prior to the amendment (which has prospective effect from June 15, 2001) provided in pertinent part:
B. Penalties for violation of Subsection A
(b) Distribution, dispensing, or possession with intent to produce, manufacture, distribute or dispense cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule 11(A)(4) of R.S. 40:967 shall be sentenced to a term of imprisonment at hard labor for not less than five years nor more than thirty years, with the first five years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
La. R.S. 14:27 provides in pertinent part:
D. Whoever attempts to commit any crime shall be punished as follows:
(3) In all others cases [the defendant] shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. [Emphasis added.]
La. R.S. 40:979A, applicable to the present offense of attempted possession of cocaine, provided:
A. Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
The maximum sentence for attempted possession with the intent to distribute cocaine could not exceed one-half of the longest term of imprisonment and would be one-half of thirty years or 15 years with the first five years without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:27 and La. R.S. 40:979 A do not provide for a minimum sentence for the attempted offense. La. R.S. 15:529.1, the applicable statute existing prior to the amendment (which has prospective effect from June 15, 2001) provided in pertinent part:
529.1. Sentences for second and subsequent offenses; certificate of warden or clerk of court in the state of Louisiana as evidence
A. (1) Any person who, after having been convicted with this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children's Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(b)(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by im *145 prisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

. These cases held that the reviewing court would not correct an illegally lenient sentence on appeal when the State did not raise the issue.

. La. R.S. 15:301.1 provides:
§ 301.1 Sentences without benefit or probation, parole, or suspension of sentence; correction
A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court’s own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have stranding to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
In State v. Williams, id.., the Louisiana Supreme Court noted:
The plain language of Paragraph (D) subjects sentencing amendments "authorized by the provisions of this Section” to the 180 day time limitation. As pointed out, no amendment of the defendant’s sentence was accomplished through any provision of La. Rev.Stat. Ann. § 15:301.1: sentencing errors akin to those delineated under Paragraph A are not subject to amendment; and those errors recognized in Paragraph B were not raised either by the sentencing court or the district attorney, the method authorized in La.Rev.Stat. Ann. § 15:301.1(B). Accordingly, whatever time limitation provided in Paragraph D was inapplicable to the appellate court under the particular procedural facts present. [Emphasis added.]
Id., 800 So.2d at 802.

. A sentence may be reviewed for constitutional excessiveness even though it is within statutory guidelines. State v. Cann, 471 So.2d 701, 703 (La.1985); State v. Monette, 99-1870 (La.App. 4 Cir. 3/22/00), 758 So.2d 362. In reviewing a sentence for excessiveness, the Court must first determine whether the trial court complied with La.C.Cr.P. art. 894.1 in imposing the sentence and then determine whether the sentence is too severe given the circumstances of the case and the defendant's background. State v. Lobato, 603 So.2d 739, 751 (La.1992). Full compliance with La. C.Cr.P. Art. 894.1 is not required where the record clearly shows an adequate factual basis for the sentence imposed as the goal of the article is an articulation of a factual basis for the sentence rather than rigid or mechanical compliance with its provisions. Id. If the sentence needlessly imposes pain and suffering and is grossly out of proportion to the seriousness of the offense so as to shock our sense of justice, then it may be determined to be unconstitutionally excessive in violation of La. Const, art. I, § 20 (1974). Id. The sentencing judge must always start with pre *148 sumption that mandatory minimum sentence under Habitual Offender Law is constitutional and may only depart from minimum sentence, if it finds clear and convincing evidence rebutting presumption under La. R.S. 15:529.1 et seq. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The trial judge must articulate specific reasons why the sentence is the longest sentence permitted by the constitution. Id.