828 So.2d 1207 (2002)
STATE of Louisiana
v.
Ivery J. HANDY.
No. 2002-KA-1025.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 2002.
*1208 Harry F. Connick, District Attorney, Scott Peebles, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge TERRI F. LOVE, MAX N. TOBIAS, JR.).
WILLIAM H. BYRNES III, Chief Judge.
STATEMENT OF THE CASE
On January 22, 2001 the defendant was charged with one count of simple possession of cocaine.[1] Although his arraignment was set for January 26, the minute entry of that date does not reflect that a formal arraignment was held. On February 9 the court heard and denied his motion to suppress the evidence and set the *1209 trial for March 12. On that date, the defendant withdrew his prior plea of not guilty and pled guilty as charged, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the trial court's ruling on the motion to suppress the evidence. On that same date, the State filed a multiple bill charging the defendant as a second offender. The defendant pled guilty to the multiple bill, and the court sentenced him as a second offender to serve seven years at hard labor. On January 17, 2002, the court granted the defendant's pro se request for an appeal.
FACTS
At approximately 11:30 p.m. on December 14, 2000, police officers were on patrol on Thalia Street, an area where they had made narcotics arrests in the past. As they drove through the 2600 block of Thalia they observed the defendant, Ivery Handy, walking toward them with his head down. As the officers slowly drove toward Handy, he looked up and saw the police car. He stopped and put his right hand in his pants pocket. As the officers got closer to him, he took his hand out of his pocket and dropped an object onto the ground. The officers stopped their car and asked Handy to step over to their car. He complied, and while one officer frisked Handy, the other officer retrieved the object Handy had discarded, which was a matchbox. The officer opened the matchbox and found inside two glass tubes with burned edges, copper mesh, and white powder residue on them. Recognizing these items as crack pipes, the officers then arrested Handy for possession of drug paraphernalia. The officers searched Handy incidental to this arrest and found two rocks of crack cocaine and a clear plastic bag of marijuana in his pockets.
On cross-examination, the officer stated he and his partner did not see Handy involved in any suspicious activity before he observed them. He testified that Handy appeared nervous when he spotted the police car, but he admitted that most people in that neighborhood became nervous upon seeing the police. He also admitted he did not know what the object was that Handy dropped when he first dropped it. He stated the crack pipes were cold when he retrieved them from the ground.
ERRORS PATENT
A review of the record for errors patent reveals there is no indication the appellant was ever arraigned on the charge against him. According to the docket master, after the case was allotted the arraignment was set for January 26, 2001. The minute entry of that date, however, does not reflect that the appellant was arraigned or that he formally pled to the charge at that time. La.C.Cr.P. art. 831 provides in part that a defendant must be present at arraignment and when a plea is given unless, as per Article 832, he voluntarily absents himself. However, Article 832 further provides that "the defendant may always object to his absence at the arraignment or plea to the merits, provided the objection is made before the commencement of trial." Here, although there is no indication of an arraignment, the appellant subsequently "withdrew" his former plea of not guilty and pled guilty as charged under Crosby. Thus, even though the record does not show the appellant initially pled not guilty, all parties were under the assumption he did so. In addition, even if he did not so plead, he subsequently entered the Crosby plea. Thus, any error in failing formally to arraign the appellant, if indeed it did not occur, was cured by his subsequent plea.
There are no other errors patents.
ASSIGNMENT OF ERROR
By his sole assignment of error, the appellant contends the trial court erred by *1210 denying his motion to suppress the evidence. Specifically, he argues the officers were without reasonable suspicion to stop him when he dropped the contraband.
The appellant threw down the matchbox containing the crack pipe and residue upon seeing the officers slowly approaching in their car. It has long been held that property cannot be seized legally if it was abandoned pursuant to an infringement of the person's property rights. However:
if ... property is abandoned without any prior unlawful intrusion into a citizen's right to be free from government interference, then such property may be lawfully seized. In such cases, there is no expectation of privacy and thus no violation of a person's custodial rights.
State v. Belton, 441 So.2d 1195, 1199 (La. 1983). See also State v. Britton, 93-1990 (La. 1/27/94), 633 So.2d 1208; State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993); State v. Allen, XXXX-XXXX (La.App. 4 Cir. 7/18/01), 792 So.2d 93; State v. Dennis, 98-1016 (La. App. 4 Cir. 9/22/99), 753 So.2d 296. As noted by the Court in Britton: "[T]he police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a public place." Britton, 93-1990 at p. 2, 633 So.2d at 1209.
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. Tucker. An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id. The Supreme Court listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was "virtually certain" to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id. An actual stop is imminent "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Tucker, 626 So.2d at 712.
In State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1182-1183, the Court divided encounters between police and citizens into three "tiers" and described the lowest tier of interaction between the police and citizens:
In United States v. Watson, 953 F.2d 895, 897 n. 1 (5th Cir.1992), cert. denied, 504 U.S. 928, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992), the court articulated a useful three-tiered analysis of interactions between citizens and police under the Fourth Amendment. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Id.; State v. Britton, 93-1990 (La.1/27/97); 633 So.2d 1208, 1209 (noting that police have the same right as any citizen to approach an individual in public and to engage him in conversation under circumstances that do not signal official detention).
In two cases very similar to this case, this Court found the officers were justified in stopping the defendant and seizing *1211 abandoned objects because the officers' initial actions did not amount to an imminent actual stop. In State v. Jackson, XXXX-XXXX (La.App. 4 Cir. 2/13/02), 812 So.2d 139, a group of officers were approaching a group of men which included the defendant. Upon seeing the officers, the defendant walked away from the group, threw something over a fence, and walked back to the group. The officers stopped their car and detained the defendant, while one officer retrieved the object thrown over the fence, which was found to be crack cocaine. This court upheld the trial court's denial of the defendant's motion to suppress the evidence, finding that the defendant abandoned the crack cocaine prior to any interference with his privacy rights. This Court further found that the defendant's abandonment of the object gave the officers reasonable suspicion to detain him while they retrieved the abandoned object, and when the officers discovered the abandoned object contained contraband, they had probable cause to arrest the defendant.
Likewise, in State v. Portis, 2000-2665 (La.App. 4 Cir. 2/13/02), 811 So.2d 951, the officers had stopped at a stop sign when they saw the defendant throw down something. The officers detained the defendant and retrieved the objects, which were rocks of crack cocaine. As in Jackson, this Court found the officers had not violated any privacy rights prior to the defendant's abandonment of the cocaine, and thus they could lawfully seize the cocaine. This Court found the abandonment gave the officers reasonable suspicion to detain the defendant while they retrieved the abandoned objects, and the discovery of the cocaine gave them probable cause to arrest the defendant.
In support of this assignment of error, the appellant argues that the evidence should have been suppressed because at the time the officers were driving down the street they intended to stop him, and they had no reasonable suspicion to do so prior to his abandonment of the matchbox. However, any such subjective intent would not render the seizure invalid. In State v. Dobard, 2001-2629 (La.6/21/02), 824 So.2d 1127, cited by the appellant on different grounds, the officers entered a bar with the purpose of conducting a "vice check" wherein they intended to ask all the patron if they had guns or contraband. As the officers entered and identified themselves as police officers, the defendant (who was sitting in the bar) turned from them and discarded crack cocaine. The Court upheld the seizure of this evidence. The Court admitted that if the officers had recovered the cocaine from the defendant pursuant to a frisk or a search, the evidence would not have been lawfully seized. However, the officers could lawfully enter the bar, and because the defendant abandoned the cocaine in response to their mere identification of themselves, they could lawfully seize it. The Court stated: "The fact that the officers might have held a subjective intent to search patrons of Lo Dee's bar for narcotics or weapons is of no moment because defendant discarded the contraband before, rather than after, the officers acted to effectuate their subjective intent." Id. at p. 9, 824 So.2d at 1133.
In the instant case, the officers were merely driving slowly down the street toward the appellant when he threw down the matchbox containing the crack pipe. The officers' actions cannot be seen as an imminent actual stop, requiring reasonable suspicion to stop. Indeed, in State v. Jackson, XXXX-XXXX (La.3/15/02), 824 So.2d 1124, the Court found no imminent actual stop where officers went to a residence mentioned in a tip, got out of their car, stood at the fence to the residence, and merely identified themselves to the defendant who matched the description given in *1212 the tip and who had walked quickly up on the porch. Likewise, in State v. Lewis, XXXX-XXXX (La.4/26/02), 815 So.2d 818, the Court found no imminent actual stop where the officers walked up to the defendant and his companion and stood in their way while asking them for their identification.
In the instant case, the appellant abandoned the matchbox prior to any actions by the officers which could be interpreted as an imminent actual stop. As such, they could lawfully seize the matchbox and open it. In addition, the appellant's abandonment of the matchbox, added to the time of night and the reputation of the area, gave the officers reasonable suspicion to detain him while they retrieved the matchbox. See State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713; State v. Dank, 99-0390 (La.App. 4 Cir. 5/24/00), 764 So.2d 148; State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743. Once they discovered the crack pipes inside the matchbox, they had probable cause to arrest the appellant for possession of drug paraphernalia, and incidental to that arrest they searched him and found the cocaine and marijuana. See State v. Wilson, 467 So.2d 503 (La.1985); State v. Fontenot, XXXX-XXXX (La.App. 4 Cir. 8/8/01), 795 So.2d 410; State v. Johnson, 94-1170 (La.App. 4 Cir. 8/23/95), 660 So.2d 942.
The trial court properly denied the motion to suppress the evidence. This assignment has no merit.
For the foregoing reasons, the appellant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The defendant was also charged in case # 419-230 with simple possession of marijuana. The judge heard the trial in that case at the same time he heard the suppression motion in this case and found the defendant guilty as charged in the marijuana case. The defendant waived all delays, and the court sentenced him to serve ninety days at hard labor. That conviction is not a subject of this appeal.