839 So.2d 206 (2003)
STATE of Louisiana
v.
Charles WILSON.
No. 2002-KA-0776.
Court of Appeal of Louisiana, Fourth Circuit.
January 22, 2003.
*208 Harry F. Connick, District Attorney, Donna R. Andrieu, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, for Charles Wilson.
Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY III, and Judge MICHAEL E. KIRBY.
CHARLES R. JONES, Judge.
Charles Wilson appeals his conviction for possession of crack cocaine, and his sentence as a multiple offender to life imprisonment. Because we find that Wilson's sentence may present extenuating circumstances, which warrant a lesser sentence, we affirm his conviction, vacate his sentence and remand to the district court for resentencing.

PROCEDURAL HISTORY
Wilson was charged by bill of information with possession of crack cocaine, violation of La. R.S. 40:967(C). He entered a plea of not guilty and waived pretrial motions. The district court reopened motions at the oral request of Wilson and a hearing was held on probable cause and Wilson's motion to suppress evidence. The minute entry indicates that the district court found probable cause for the preliminary hearing, and denied the motion to suppress evidence. The defense objected to the ruling of the court, and the district court set the matter for ruling on the objection. The transcript, however, reflects that at the conclusion of testimony at the hearing, the matter was submitted to the district court with legal memoranda to be submitted by each side prior to the court's ruling. Subsequently, the district court denied the motion to suppress evidence and set the matter for trial. Wilson was tried by a six-member jury and found guilty as charged. He was sentenced to two years imprisonment, credit for time served.
The State of Louisiana filed a multiple bill charging Wilson as a fourth felony offender under La. R.S. 15:529.1. On this same date, a multiple bill hearing was held, and the district court found Wilson to be a fourth felony offender. At that time, without first vacating the original sentence imposed, the district court sentenced Wilson to life imprisonment without benefit of parole, probation, or suspension of sentence. Immediately after sentencing, Wilson filed motions to reconsider the sentence and to quash the multiple bill, both of which were denied by the district court. This timely appeal follows.

STATEMENT OF FACT
Police officers Corey Robinson, Merlin Bush and Jamal Little testified at trial that they were assigned to the COPS unit *209 at the St. Bernard housing development. They were executing a plan they had devised to catch possible trespassers who might be dealing in narcotics at the housing development. The officers were patrolling in response to numerous complaints about illegal narcotics in certain parts of the housing development. They planned to go into one of the suspected narcotics areas in the 1400 block of St. Denis Street and approach anyone they found, regardless of whether they were residents, in an attempt to prevent such persons from running away.
In execution of their plan, the officer selected an apartment building in the 1400 block of St. Denis, and Officer Robinson parked his marked patrol unit in the rear driveway of St. Denis and came around the front on foot. Officers Bush and Little drove into the St. Denis courtyard in their marked patrol unit After observing someone on the front porch of the building, they stopped their car fifteen to twenty feet away, and illuminated the area with their spotlight while Officer Robinson approached the porch from the side. Wilson was alone on the porch. Officer Robinson described him as leaning against a window ledge and Officers Bush and Little described him as sitting on the steps of the porch. Officer Robinson testified at trial that he was ten or thirteen feet away when the spotlight hit Wilson, who he described as looking nervous. Officer Robinson further testified that he saw Wilson walk about three feet toward the front of the porch and discard something from his hand over the edge. Officer Bush testified at trial that he also saw Wilson make a motion with his hand. Officer Little testified at trial that he saw Wilson stand up and walk towards them, but he did not see Wilson discard anything.
Officer Robinson testified at trial that he gave a planned signal to the other officers to come and handcuff Wilson while he distracted him with casual conversation. At trial, Officers Bush and Little testified that as they exited their vehicle, Officer Bush handcuffed Wilson, gave him his Miranda warnings and placed him under arrest after Officer Robinson advised them of the discarded suspected narcotics he had retrieved. As Officers Robinson and Bush were detaining Wilson, Officer Little further testified that he noticed two other subjects "moving about off that porch", and realized that the female was not a resident of the building. Officer Bush testified that he briefly detained and questioned the female and her male companion long enough to ascertain that there were no warrants out for them. Officers Robinson and Bush testified that they recalled Officer Little detaining subjects but that they were not on the porch. At the time of Wilson's arrest, the officers cited him for criminal trespass on HANO property after determining that he did not have a legitimate reason to be on the porch of the building.
At trial, the defense presented a version of the facts very different from the testimony of the state. Sheila Ann Dickson was the sole witness for the defense. Ms. Dickson, who lives around the corner from the porch, testified at trial that she was standing on the porch with her fiancé, Lester Antoine, and Wilson on the evening in question when a young girl walked up on the porch. The officer approached and asked the young girl why she was standing there, and the girl replied that she was waiting for the twin daughters of Ms. Dickson. The officers told the girl to go about her business, and told Ms. Dickson, Mr. Antoine, and Wilson to get on their knees and empty their pockets. The officer flashed a light on the ground, discovered the bag of cocaine, and asked who it belonged to. The three denied ownership, and Ms. Dickson told the officers that the *210 bag of cocaine was dropped by the young girl. The officer allowed Ms. Dickson and Mr. Antoine to leave after confirming that there were no warrants out for them. Ms. Dickson further testified that she had never been arrested, and that she had grown up with Wilson and known him for forty years.

ERRORS PATENT
A review of the record reveals one potential error patent. There is no indication in the record that the district court vacated the original sentence before imposing sentence pursuant to La. R.S. 15:529.1. Wilson suggests this fact in passing, in his brief, but he does not argue the point. In State v. Moffett, 572 So.2d 705 (La.App. 4 Cir.1990), this Court held that a multiple offender sentence must be vacated and the case remanded for resentencing where the district court failed to vacate the original sentence prior to imposing the multiple offender sentence. However, this Court recently held that in cases where it is clear that the district court intended to replace the original sentence with the multiple offender sentence, any failure of the district court to vacate the original sentence before imposing the multiple offender sentence does not affect a defendant's substantial rights. State v. Norwood, XXXX-XXXX, p. 4-5, (La.App. 4 Cir. 8/29/01), 802 So.2d 721, 724-725, interpreting State v. Mayer, 99-3124 (La.3/31/00), 760 So.2d 309, 816 and citing State v. Jackson, XXXX-XXXX (La.App. 1 Cir. 2/16/01), 814 So.2d 6. In applying Mayer, this Court stated:
Here, the State did not supply the commitment form, as was present in Mayer. However, as in Jackson, the transcript of the May 18, 1981 sentencing indicates the trial court intended that the multiple offender sentence take the place of the original sentence. * * * At neither of the 2001 hearings did the defendant argue that the D.O.C. considered him to have both the original sentence and the multiple bill sentence pending against him, and there is no indication in the application before this court that he is facing two sentences in this case. Indeed, he did not raise any such claim in any of his earlier writs to this court. Thus, the D.O.C. considers he has only one sentence, and it follows that any failure of the trial court to vacate his original sentence in 1981 before imposing the multiple offender sentence did not affect his substantial rights.
Norwood, XXXX-XXXX, p. 5-6, 802 So.2d 721, 724-725. As in Norwood, the transcript herein suggest that the district court intended for the original two-year sentence to be replaced by the habitual felony offender sentence of life imprisonment; as evidenced by this colloquy:
The Court: Based on the submissions by the State the Court at this time is going to find that under Louisiana Revised Statute 15:529.1 that the defendant, Charles Wilson, is a fourth felony offender, and with two of the predicate offenses being possession with intent to distribute cocaine. Ms. Renfroe, are you now ready for sentencing?
Ms. Renfroe: Yes, your Honor.
The Court: Since this is a fourth felony..., at this time Mr. Wilson I am going to sentence you to life imprisonment without benefit of parole, probation or suspension of sentence for the remainder of your natural life. I'm sorry to have done that but the statute mandates that.
The failure of the district court to vacate Wilson's original sentence was an oversight, and the district court intended for the multiple offender sentence to replace the original sentence. In addition, Wilson did not object to this oversight at the multiple bill hearing and does not argue *211 the point on appeal. Therefore, we find that any failure of the district court to vacate Wilson's original sentence before imposing the multiple offender sentence did not affect his substantial rights.

ASSIGNMENT OF ERROR NUMBER 1
On appeal Wilson first argues that the district court erred in denying his motion to suppress evidence after concluding that an actual stop was not imminent at the time he allegedly discarded the zip loc bag containing cocaine.
The Fourth Amendment and Article I § V of the Louisiana Constitution protect individuals from unreasonable searches and seizures. However, the right of law enforcement officers to stop and question a person where there is reasonable suspicion to believe that the person is committing, has committed, or is about to commit a crime is recognized by State and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Keller, 403 So.2d 693, 697 (La.1981); State v. Portis, 2000-2665 (La. App. 4 Cir. 2/13/02), 811 So.2d 951. When property is abandoned without any prior unlawful intrusion into a person's right to be free from governmental interference, that property may be lawfully seized. State v. Belton, 441 So.2d 1195, 1199 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Handy, XXXX-XXXX, p. 2 (La.App. 4 Cir. 9/25/02), 828 So.2d 1207.
An individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to a police showing of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The Louisiana Supreme Court adopted the Hodari D. definition of an actual stop in State v. Tucker, 626 So.2d 707, 712 (La.1993), opinion reinstated on reh'g, 626 So.2d 720 (La.1993). An imminent actual stop occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Tucker, 626 So.2d 707, 712.
The Supreme Court in Tucker listed the following factors to be considered in assessing the extent of police force employed in determining whether that force was "virtually certain" to result in an actual stop of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id., at 712.
In State v. Johnson, 01-2436 (La.1/25/02), 806 So.2d 647, the district court held that an actual imminent stop had occurred when two police officers in an unmarked car pulled up four feet from where the defendant was standing. In concluding that an actual stop was not imminent, the court in Johnson focused on the fact that the officers had not "attempted to assert an official authority over him by ordering or signaling him to stop" before he threw down the contraband. Johnson, 806 So.2d 647, 648. Likewise, in State v. Jackson, 00-3083 (La.3/15/02), 824 So.2d 1124, the Louisiana Supreme Court held that an actual stop was not imminent when the defendant dropped crack cocaine as two officers exited their unmarked police car, approached the defendant, and identified themselves as the police. The Court recognized that, even though the *212 officers had positioned themselves in such a manner that "intentionally left respondent with no easy route of escape," the officers had not chased the defendant or otherwise communicated their intent to stop him. Jackson, 00-3083, p. 2, 824 So.2d 1124, 1125.
In a recent case from this Court, State v. Jackson, XXXX-XXXX (La.App. 4 Cir. 2/13/02), 812 So.2d 139, three officers, driving in one vehicle down a one-way street with parked cars on both sides, approached a group of men loitering on the steps of an abandoned building at approximately 11:00 p.m. As they approached, the officers observed the defendant separate himself from the group of young men loitering in front of an abandoned house and throw something over a fence and return to the group. The officers secured Joseph Jackson and the other men with him, and Officer McCabe retrieved the object tossed by Joseph Jackson. The object was a plastic bag which contained white rock-like objects Officer McCabe believed to be crack cocaine. This Court found that the object was discarded by the defendant without police interference, and therefore, the officers could retrieve it.
In the instant case Wilson argues that the officers were not simply driving down the street but were executing a plan intended to box in suspects and shine their spotlight on him, leaving him unable to disregard the encounter and walk away. In State v. Chopin, 372 So.2d 1222 (La. 1979), the Louisiana Supreme Court reversed a defendant's conviction, concluding that the police did not have reasonable suspicion to stop the man who was walking down the service road of a highway carrying a brown paper bag. The officer drove past the man, turned around, and came back toward him, shining their bright lights and stopping three to four feet in front of him. At that point, the man dropped his bag and began to run. The bag was later found to contain marijuana. Chopin, 372 So.2d 1222, 1224. The district court found Chopin to be distinguishable from the facts of the instant case, and it appears that the trial court was correct in that judgment. The defendant in Chopin was walking in a well lit, well traveled area and carrying a brown paper bag. The officers had received no reports of suspicious or illegal activity in the area or regarding the defendant. Therefore, the court concluded that the officers lacked reasonable suspicion to stop the man.
In contrast to Chopin, Wilson was on a porch in a poorly lit area where the three officers were patrolling in response to numerous complaints about illegal narcotics in certain parts of the housing development. The officers also knew that trespassing was a common problem in the area. The officers initially approached Wilson from two directions, Officer Robinson on foot from the rear of the building and Officers Bush and Little in their vehicle from the front, which they parked fifteen to twenty feet from Wilson. Wilson walked toward the officers' vehicle, and by the time the officers turned on their spotlight, he was ten to thirteen feet away. It was only when Officer Robinson noticed Wilson drop a zip loc bag, a known container for drugs, that Wilson was handcuffed, patted down, and Mirandized. The officers did not brandish weapons or come upon him with a show of force. At the time Wilson dropped the zip loc bag, he was not seized and a stop was not imminent. At the time he abandoned the zip loc bag, there had been no prior unlawful intrusion into his right to be free from governmental interference, and the zip loc bag was lawfully seized. Therefore, the district court did not err in denying his motion to suppress.

*213 ASSIGNMENT OF ERROR NUMBER 2
Wilson next argues that the district court erred in sentencing him under La. R.S. 15:529.1(A)(1)(c)(ii), as he should have been sentenced under the new law as amended by Act 403 of 2001. He concedes that this Court has previously held that the amendments to La. R.S. 15:529.1 do not apply to persons who committed their offenses prior to the date the amendments took effect. Citing, State v. Rice, 807 So.2d 350, 353 (La.App. 4 Cir. 1/16/02). He also argues that the Louisiana Supreme Court has not yet ruled on this issue and that there are compelling reasons to apply the amendments to him, citing. State v. Flagg, 815 So.2d 208 (La. App. 5 Cir. 3/26/02) (Daley, J., dissenting).
The crux of this issue, however, has been decided by the Louisiana Supreme Court. In State v. Sugasti, XXXX-XXXX (La.6/21/02), 820 So.2d 518, the court reaffirmed its long held position that a defendant must be sentenced according to the sentencing provisions in effect at the time of the commission of the crime. The court explained that "[t]he mere fact that a statute may be subsequently amended, after the commission of the crime, so as to modify or lessen the possible penalty to be imposed, does not extinguish liability for the offense committed under the former statute." Sugasti, XXXX-XXXX, p. 4, 5, 820 So.2d 518, 520. The court noted that, by its very terms, Act 403 specifies that it shall only have prospective effect, and concluded that "[h]ad the legislature intended for the more lenient sentencing provisions to take effect immediately, language signifying that intent could have easily been incorporated into the act." Sugasti, XXXX-XXXX, p. 5, 820 So.2d 518, 521, citing 2001 La. Acts No. 403, § 6. Thus, Wilson was properly sentenced under the version of La. R.S. 15:529.1(A)(1)(c)(ii), in effect at the time of the commission of his crime. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
Wilson further argues that his sentence is constitutionally excessive. He was adjudicated and sentenced as a fourth-felony habitual offender. La. R.S. 15:529.1(A)(1)(c)(ii), as it existed at the time of the offense, provided that when the fourth felony or any of the prior felonies is a violation of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for more than five years, as were two of his three prior convictions for possession with intent to distribute cocaine, the only sentence is life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The district court imposed the sentence provided for in the statute.
This Court recently reviewed the mandatory nature of the habitual felony offender sentencing scheme and the discretion that remains with the district court in such matters:
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, pp. 5-6, 709 So.2d at 675; see also State v. *214 Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, 97-1906, p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Id.

Rice, XXXX-XXXX, p. 5-6, 807 So.2d 350, 354. Just as in Rice, the district court determined that it had no discretion but to sentence Wilson to the mandatory life sentence stating: "I'm sorry to have done that but the statute mandates that. I'll note your objection to the sentence." However, the district court erroneously believed that it could not, under any circumstances, impose any sentence other than life. This Court in Rice explained as follows:
... [The] Louisiana Supreme Court's decision in Dorthey, which makes it clear that a court can find a mandatory minimum sentence under the Habitual Offender Law to be constitutionally excessive and impose a lesser sentence. While the Court is not required to consider Dorthey in sentencing a defendant, considering the enactment of Act 403, a signal that our legislature desires to revisit harsh sentencing in our state, we conclude that it was error for the district court not to have considered Dorthey in sentencing Rice. The district court did have the judicial powers to consider a sentence other than life imprisonment and the district court was erroneous in not considering an alternative sentence upon Rice's request.
Rice XXXX-XXXX, p. 7, 807 So.2d 350, 354-355.
This assignment of error has merit, and we vacate Wilson's sentence and remand the matter to the district court for consideration of sentence as permitted in Dorthey, and in consideration of La. C.Cr.P. art. 894.1.

DECREE
For the reasons herein stated, we affirm the conviction of Charles Wilson; however, we vacate and remand for resentencing in light of Dorthey, and in consideration of La.C.Cr.P. art. 894.1.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.