859 So.2d 707 (2003)
STATE of Louisiana
v.
Aaron HOUSTON.
No. 2003-KA-0854.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 2003.
*708 Eddie J. Jordan, Jr., District Attorney, Anne M. Dickerson, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS JR.
MICHAEL E. KIRBY, Judge.
The defendant, Aaron Houston, was convicted of attempted possession of cocaine, a violation of La. R.S. 14:27 and 40:967(C), following a jury trial on November 29, 2000. The State filed a multiple bill charging that the defendant had five prior convictions. On August 29, 2001, the court found the defendant to be a fourth offender, because two of the prior convictions had occurred on the same day, and sentenced him to serve thirty years at hard labor. Both the defendant and the State appealed. This Court subsequently affirmed the defendant's conviction and adjudication as a multiple offender. The Court vacated the defendant's sentence and remanded for resentencing, finding merit in the State's assignment of error that the trial court erred when it gave retroactive application to the amendments to La. R.S. 15:529.1 which were set forth in 2001 La. Acts 403. State v. Houston, XXXX-XXXX (La.App. 4 Cir. 4/24/02), 818 So.2d 253.
On July 26, 2002 the trial court sentenced the defendant to life imprisonment at hard labor without the benefit of probation, *709 parole, or suspension of sentence. On April 1, 2003 the court granted him an out of time appeal from the resentencing.
The facts of this case were set forth in this Court's original appeal opinion as follows:
At trial, Officers Cedric Gray and Mike Montalbano testified that they were on pro-active patrol about 6:35 p.m. on September 19, 2000, in the 1200 block of South Robertson Street when they noticed the defendant. He was walking in the same direction the officers were driving, and after he glanced over his shoulder and saw them, he seemed to become nervous. He stopped, put his right hand in his right pants pocket, removed a bag, dropped it to the sidewalk, and began to walk fast. Although the officers were wearing plain clothes, they were driving a 1997 Crown Victoria with a blue light on the dash; Officer Gray opined that the car is easily recognized as a police car. The officers stopped and detained the defendant who said, "I didn't drop that bag." Officer Montalbano patted him down for weapons, and Officer Gray retrieved the bag that contained a glass tube.
Officer Harry O'Neal, an expert in analysis of controlled, dangerous substances, testified that he examined the tube taken as evidence in this case. Officer O'Neal performed two conclusive testing procedures on the residue in the tube and both tests indicated the substance was crack cocaine.
Aaron Houston, the thirty-nine year old defendant, took the stand and admitted he had prior convictions for possession of marijuana, distribution of false drugs, distribution of cocaine, possession of a crack pipe, simple burglary of a business and simple gang robbery. When asked to describe what happened the day he was arrested, Houston said that he had been released from jail for trespassing and being drunk in public that morning, but he went to work that day. Late that afternoon, he was walking to his second job when the police stopped him. As the officers who testified at trial were searching him, another police officer drove up. That man asked if he had any rocks, and Houston answered," I ain't have no rocks, man. I ain't throwed [sic] nothing." He said the officers discussed giving Houston a plain rock or arresting him for trespassing; however, the third officer, who was never named, showed the other two a crack pipe and said, "We got him now." Houston was carrying a brown bag containing leftover lunch, and the officers took a sandwich bag from the brown bag and put the crack pipe in it. Houston told the officers what they were doing was wrong, and they told him he was "wrong for being in a drug area." Under cross-examination, Houston admitted to being an ex-crack addict.
Houston, pp. 1-2, 818 So.2d at 254.
The defendant assigns two errors regarding his sentence. First, he alleges that a life sentence is excessive. Secondly, he argues that the 2001 amendments to La. R.S. 15:529.1A, which became effective on June 15, 2001, should be applied to him, resulting in a sentencing range of twenty years to life instead of the mandatory life sentence which the trial court imposed on remand. Because the second issue affects the possible sentence that could be imposed, it will be addressed first.
The defendant does not dispute that this Court has held repeatedly that the 2001 amendments to La. R.S. 15:529.1 apply only to those offenses which were committed after the effective date of the act. In fact, this Court vacated the original sentence imposed in this case on that very basis. Houston, pp. 4-5, 818 So.2d at *710 256. Nevertheless, the defendant argues that this Court should adopt the reasoning of the First Circuit, which held in State v. Parker, XXXX-XXXX (La.App. 1 Cir. 3/5/03), 845 So.2d 546, that the applicable habitual offender law to be applied is that in effect when the trial court adjudicates a defendant a multiple offender, not the version in effect when the defendant commits the underlying offense. The First Circuit specifically rejected contrary conclusions reached by this circuit as well as by the Second, Third, and Fifth Circuits. Id., ftne 6.
Not mentioned by the defendant, however, is a per curiam rendered by the Louisiana Supreme Court a month after the Parker case, State v. Barnes, 2002-2059 (La.4/4/03), 845 So.2d 354. In Barnes, the defendant had been sentenced to below the statutory minimum as a multiple offender, and the State filed a writ application with this Court, which was denied on the showing made because the State had not provided the sentencing transcript that might reflect the basis for the sentence. State v. Barnes, XXXX-XXXX, unpub., (La. App. 4 Cir. 7/8/02). The Supreme Court granted the subsequent writ application filed by the State and remanded the case to the district court, stating:
Under the rule set out in Louisiana jurisprudence, the changes mandated by 2001 La. Acts 403 do not apply to sentences imposed for crimes committed before the act's effective date. State v. Mayeux, 01-3408, p. 2-3 (La.6/21/02), 820 So.2d 524, 525-26; State v. Sugasti, 01-3407, p. 6-7 (La.6/21/02), 820 So.2d 518, 521-22. Operation of this rule extends to habitual offender sentences imposed pursuant to R.S. 15:529.1. State v. Harris, 02-0873, p. 2-5 (La.App. 5th Cir.1/28/03), 839 So.2d 291, 294; State v. Wilson, 02-0776, p. 10-11 (La.App. 4th Cir.1/22/03), 839 So.2d 206, 213; State v. Wade, 36,295, p. 11-13 (La.App. 2nd Cir.10/23/02), 832 So.2d 977, 986; State v. Bagneris, 02-0773, p. 4-5 (La.App. 4th Cir.10/16/02), 830 So.2d 1047, 1050; State v. Melancon, 01-1656, p. 9 (La. App. 4th Cir.8/21/02), 826 So.2d 633, 640; State v. Houston, 02-0255, p. 4 (La.App. 4th Cir.4/24/02), 818 So.2d 253, 255-56;
State v. Flagg, 01-0965 (La.App. 5th Cir.3/26/02), 815 So.2d 208, 210-11. The case is accordingly remanded to the district court for imposition of sentence in accord with the sentencing statutes in force at the time of the offense.
Barnes, 845 So.2d at 354-55.
Therefore, considering the Supreme Court's specific approval of this Court's prior decision in this case, the defendant's contention that the 2001 amendments to La. R.S. 15:529.1 should have been applied to reduce his mandatory minimum sentence to less than life imprisonment has no merit. We turn to the remaining issue, whether the mandatory life sentence is apparently constitutionally excessive.[1]
In two cases, State v. Wilson, XXXX-XXXX (La.App. 4 Cir. 1/22/03), 839 So.2d 206, and State v. Rice, XXXX-XXXX (La.App. 4 Cir. 1/16/02) 807 So.2d 350, writ denied, XXXX-XXXX (La.9/13/02), 824 So.2d 1186, this Court discussed the relationship between the mandatory nature of the sentencing *711 scheme in La. R.S. 15:529.1 and the trial court's sentencing discretion under State v. Dorthey, 623 So.2d 1276 (La. 1993), to impose a sentence below the statutory minimum if the failure to do so would render the sentence constitutionally excessive. In both those cases, the trial court indicated that it believed it had no discretion to impose any sentence below life. The Court in Rice, whose reasoning was followed again in Wilson, stated:
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is Constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, 97-1906, p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Id.

* * *
Under the applicable section of La. R.S. 15:529.1, the district court is not given discretion as to the sentencing. The statute provides only one sentence for a defendant adjudicated a third-felony habitual offender where at least one of the three convictions was for a crime of violence as defined by La. R.S. 14:2(13). The sentence further subjects the offender to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. However, Rice argues that the district court erroneously believed that it could not, under any circumstances, impose any sentence other than life. He cites the Louisiana Supreme Court's decision in Dorthey, which makes it clear that a court can find a mandatory minimum sentence under the Habitual Offender Law to be constitutionally excessive and impose a lesser sentence. While the Court is not required to consider Dorthey in sentencing a defendant, considering the enactment of Act 403, a signal that our legislature desires to revisit harsh sentencing in our state, we conclude that it was error for the district court not to have considered Dorthey in sentencing Rice. The district court did have the judicial powers to consider a sentence other than life imprisonment and the district court was erroneous in not considering an alternative sentence upon Rice's request.
Rice pp. 5-7, 807 So.2d at 354.
In the instant case, the trial court at the time it initially sentenced the defendant *712 believed the 2001 amendments to La. R.S. 15:529.1 applied and thus chose to impose a sentence of thirty years from a possible range of twenty years to life imprisonment. It is clear therefore that, although the trial court could have done otherwise, it concluded that a life sentence was not appropriate despite the fact that the defendant actually had a total of eight criminal convictions. Moreover, the trial court at the time of the original sentencing concluded that it could "see no redeeming social factors" in the defendant and that the defendant had "contributed nothing" to society except to force the citizens of Louisiana and California, the two states in which he had been incarcerated, to pay "$30.00 a day to keep" him locked up. Despite this harsh characterization of the defendant, the court determined that a sentence of thirty years, and not life imprisonment, was appropriate. Notably, although in the multiple bill the State charged the defendant with being a sixth offender, all of those convictions are narcotics offenses. The only indication that the defendant had committed a crime of violence is a habitual offender bill attached to the certified packet of convictions from the State of California which reflects that in 1980 the defendant was convicted of robbery; that bill also reflects a 1983 conviction for burglary. Thus, although the defendant has a lengthy criminal record, all of his convictions in the last twenty years have been directly related to his addiction to cocaine, and none have involved weapons or violence, tending to indicate that a life sentence would be excessive, although a substantial sentence is still appropriate. See State v. Augillard, 03-0237 (La.App. 4 Cir. 6/4/03), 853 So.2d 17.
At the resentencing on July 26, 2002, the court gave no reasons for the life sentence it imposed except to note that this Court had remanded for resentencing. The court clarified that it understood that the defendant fell "under the old law of mandatory life" and, "[b]ased on that" sentenced the defendant to life imprisonment. When the defendant questioned the trial court about the ruling of this Court remanding for resentencing, which the defendant erroneously believed was based on this Court having agreed with his claim that thirty years was an excessive sentence for possession of a crack pipe, the trial court stated that this Court had vacated his sentence, "because it wasn't enough. I thought thirty years was plenty." The court then instructed that the court minutes reflect "as per ruling of the Fourth Circuit Court of Appeal, they had already set aside the thirty year sentence. I impose a sentence of life without benefit of probation, parole or suspension of sentence."
As with the Wilson and Rice cases, it appears that the trial court in this case imposed the life sentence only because it believed it had no alternatives. However, this Court's decision in the defendant's original appeal addressed the State's argument that the 2001 amendments could not be retroactively applied and found that it had merit. This Court did not address whether a life sentence would be constitutionally excessive.
Accordingly, as in Wilson and Rice, we find that this assignment of error has merit. We vacate the defendant's sentence and remand the matter to the district court for consideration of sentence as permitted in Dorthey and in consideration of La.C.Cr.P. art. 894.1.
SENTENCE VACATED; REMANDED.
NOTES
[1] The defendant concedes that no motion to reconsider sentence was filed after his resentencing. While the State argues that the failure to file such a motion should bar consideration of the issue, we agree with the defendant that the issue has adequately been preserved because a motion was filed after his initial sentencing to thirty years and he raised excessive sentence as an assignment of error in the first appeal, but this Court did not address that claim because we vacated the sentence and remanded for resentencing.