MICHAEL E. KIRBY, Judge.

JiSTATEMENT OF THE CASE

The State filed a bill of information against defendant charging him with forcible rape. He pled not guilty at arraignment. Following a preliminary hearing the trial court found probable cause and after a subsequent hearing on defendant’s motion to suppress the identification, the trial court denied that motion, too.
After jury selection began defendant filed a motion to declare non-unanimous jury verdicts unconstitutional. The trial court denied the motion, and the trial commenced. The State called five witnesses and defendant testified in his own defense. The jury returned the responsive verdict of attempted forcible rape.
Prior to sentencing, the defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial which the trial court denied. After defendant waived all delays, the trial court sentenced him to twenty years at hard labor.
Thereafter the state filed a multiple bill of information alleging the defendant to be a third felony offender. The bill alleged two previous convictions for simple burglary. Because simple burglary is punishable by imprisonment for up to twelve Lyears, the multiple bill subjected defendant to a mandatory life sentence under the terms of La. R.S. 15:529.1(A)(1)(a)(iii) [1]:
The defendant also moved the court to consider imposing less than the mandatory life sentence under State v. Dorthey, 623 So.2d 1276 (La.1993). Testimony and evidence was taken on the multiple bill. The court took the matter under advisement but, the following day, found him to be a third felony offender, denied the motion to consider a sentence other than life imprisonment, and sentenced the defendant to life imprisonment. Defendant objected.
On appeal defendant asserts three assignments of error: 1) that the trial court erred in not declaring non-unanimous verdicts in non-capital felony cases unconstitutional; 2) that the trial court erred in not considering whether his mandatory life sentence was unconstitutionally excessive and, 3) that the evidence was insufficient to establish that he was a third felony offender. Because we find from the record that the trial court did not understand he had discretion to impose a sentence less than the statutorily mandated life sentence, we vacate relator’s sentence and remand for a new sentencing hearing at *256 which defendant may attempt to bring himself within the provision of State v. Dorthey, 623 So.2d 1276 (La.1993). Otherwise, the defendant’s conviction is affirmed.

JoFACTS:

Officer Michael Milan of the New Orleans Police Department testified that on February 2, 2007 at approximately 1:00 a.m., he was dispatched to the 100 block of S. Rampart Street regarding a man being held at gunpoint by a citizen in connection with a rape. When Officer Milan arrived he observed that it was a mostly empty parking lot, save for two large Conex tractor trailers. He saw a male subject holding a gun on another male subject who was lying face down on the blacktop. Officer Milan instructed the subject to put away his gun and then handcuffed the suspect on the ground. Officer Milan secured the scene and advised the dispatcher to notify the rape squad.
Officer Gary Kessler, of the Special Operations Division, Sexual Assault Unit, testified that he arrived on the scene approximately twenty minutes after receiving a call from the command desk.
Initially, he observed the defendant in the back of Officer Milan’s police unit. The victim, J.D., was leaning on the front of the patrol car.[2] Kessler interviewed the victim whom he described as clearly distraught. He observed that she had lacerations and bruises to her face, head, and back. There was a laceration over her right eye that was swollen and beginning to close. Officer Milan identified several photographs taken by the crime lab depicting the victim’s condition. In addition, he identified several photographs of the area behind one of the Conex boxes where the rape took place.
Ecoee Rooney, a sexual assault nurse examiner, testified that she completed a sexual examination of the victim. Rooney reported that the victim was in a great 14deal of pain as a result of her injuries. Nurse Rooney noted the victim’s clothing was soaking wet from her having fallen in a puddle of water during the assault. Nurse Rooney completed a rape kit, collecting swabs from each area of injury or where there may have been contact with the suspect. Nurse Rooney labeled all the swabs carefully and then placed them in boxes and packaged the entire kit and sealed it. Some toilet tissue, used by the victim after being admitted, was also collected as evidence. Nurse Rooney noted micro tears or abrasions at the vaginal opening as well as a contusion to J.D.’s anus. Nurse Rooney also noted contusions on the victim’s buttocks, which would have been consistent with falling. The victim’s toxicology exam was positive for cocaine and marijuana and she admitted to having consumed a small amount of crack cocaine and some marijuana that night.
Mollie Bride, a DNA forensic Scientist at the Louisiana State Police Crime Lab, was qualified as an expert in the field of Forensic DNA analysis. Ms. Bride testified that she conducted DNA testing on the evidence in the rape kit collected from J.D. She concluded that the defendant could not be excluded as a contributor to the DNA that was in a piece of toilet tissue. Testing of another piece of toilet tissue, reflected that there were two contributors to DNA thereon and that neither the victim nor Mr. Green could be excluded as contributors. This was significant as ninety-nine percent of the population could *257 be excluded as potential contributors, leaving Mr. Green in the one percent of the population that could have contributed the DNA. Furthermore, Ms. Bride stated that statistically, it was 1.03 billion times more likely that the DNA profile generated from the mixture of DNA identified in the sample was derived from J.D. and the defendant rather than J.D. and an unknown individual.
la J.D. testified that at the time of the incident she was homeless and living on the streets of New Orleans. She related that a little after midnight she was looking for a place to sleep. When she was on Canal Street in front of a jewelry shop near the corner, a man came up to her from behind, pushed her behind a dumpster in a parking lot behind the jewelry shop near a large white trailer. The man told her to pull her pants down and to get on her hands and knees.
He attempted to have intercourse with her but was not able to. Angry, he struck her several times in the head with his fists and continued to do so until, eventually, he grew tired from hitting her. Ultimately, he was able to have intercourse.
The victim explained that she was on her hands and knees the entire time, was crying and screaming throughout the attack until she could no longer do so because her throat and mouth were so dry.
Finally, the defendant let her up. Her pants, which were down about her knees, were soaking wet. She looked up and saw two men, and she yelled for help, letting them know she had been raped. She saw that they had a dog and were armed. The men had her assailant get down on the ground. Shortly thereafter the police arrived.
J.D. stated that she did not know the defendant but recalled seeing him on the street on a previous occasion. She admitted previous convictions for possession of crack, distribution of crack, and possession of drug paraphernalia.
Under cross examination, J.D. recalled her previous testimony that the defendant took her across the street to the parking lot were the rape occurred. J.D. did not try to break away from him because she feared he was armed. Mr. Green told her his name when they were behind the dumpster.
| (;Gregory Black testified that at the time of this incident he was living in the building adjacent to the parking lot. That evening, his associate went out to the parking lot area to walk his dog but, he returned frightened, stating that something wrong was going on in the parking lot. Mr. Black went outside to investigate. He heard a faint cry and then almost a whine, as the victim stated that she was being raped. He was some sixty feet from the trailer. Initially he did not see any movement and then he spotted the silhouette of a man. Gun in hand, Mr. Black moved in closer to see what was happening. The man walked towards Mr. Black with his hands in the air. His pants were down to his knees. Mr. Black ordered the man to the ground repeatedly until he finally complied. Mr. Black held the gun on the defendant and frisked him.
Mr. Black’s associate retrieved the woman from behind the trailer. Mr. Black could see that she was badly beaten and that her pants were down to her knees. She appeared to be in shock. Mr. Black called 911.
James Green testified in his own defense. He testified that he was well acquainted with the victim from when he worked as a security guard at the Ozanam Inn, a homeless shelter. Green stated that on the night in question the victim approached him as he exited a convenience store. After sharing a beer and a ciga *258 rette with J.D., she inquired whether he had any crack and offered to trade sex for some. Mr. Green told J.D. that he knew where he could get some and related that he visited a friend at a nearby tattoo shop and acquired some crack. He and J.D. went to the parking lot at the victim’s suggestion where she smoked the crack in a glass pipe. Green testified that he was unable to have sex with J.D. He stated that after smoking the crack, J.D. started acting crazy. She wanted him to give her his remaining money, six dollars, but he refused. J.D. started hitting him, 17and he pushed her down in defense. At about that time he observed the man with the dog, and then he saw Mr. Black appear.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

In the first of his three assignments of error, defendant argues through counsel that the trial court erred in denying his motion to declare La.C.Cr.P. art. 782(A) unconstitutional, to the extent that it allows for a non-unanimous verdict in non-capital felony cases.[3]
However, because defendant did not request that the jury be polled, the record does not reflect whether the jury actually rendered a non-unanimous verdict in this case. Accordingly, defendant lacks standing to raise the issue. However, we note that this issue has been addressed by this court and found to be without merit. See State v. Barbour, 2009-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, following State v. Bertrand, 2008-2214, 2008-2311 (La.3/17/09), 6 So.3d 738.

ASSIGNMENT OF ERROR NUMBER 2

His next alleged error is that the trial court failed in its duty to consider whether his life sentence, although mandatory was nevertheless unconstitutionally excessive. Defendant, both through counsel and pro se, asks us to remand his case to the trial court to consider whether his life sentence is excessive.
|RAs noted previously, at the multiple bill hearing, defendant motioned the trial court to consider that a life sentence in his case would be unconstitutionally excessive under State v. Dorthey. The trial court took the issue under advisement and made the following ruling prior to entering sentence.
Given the previous criminal history and this particular conviction, this Court is left with no discretion, Mr. Green, except to sentence you to serve a term of life imprisonment without benefit of probation, parole, of suspension of sentence.
In State v. Rice, 2001-0215 (La.App. 4 Cir. 1/16/02), 807 So.2d 350, this court discussed the mandatory nature of the habitual felony offender sentencing scheme and the discretion that remains with the district court in such matters:
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). However, the entire Habitual Offender Law has been held *259 constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, 97-1906, p. 8, 709 So.2d at 677. “Departures downward from the ^minimum sentence under the Habitual Offender Law should occur only in rare situations.” Id.
Rice, 2001-0215, p. 5-6, 807 So.2d 350, 354.
It is apparent from the trial court’s comments that it believed that it had no discretion and that it could not impose any sentence other than that mandated by La. R.S. 15:529.1. Citing Rice and State v. Wilson, 2002-0776 (La.App. 4 Cir. 1/22/03), 839 So.2d 206, defendant argues that the case should be remanded for the trial court to consider whether the life sentence is unconstitutionally excessive. In both Rice and Wilson this court did remand for re-sentencing after finding that the trial court erroneously believed that “it could not, under any circumstances, impose any sentence other than life,” and this Court concluded that it was error for the district court not to have at least considered an alternative sentence under Dorthey “which makes it clear that a court can find a mandatory minimum sentence under the Habitual Offender Law to be constitutionally excessive and impose a lesser sentence upon the defendant’s request.” Wilson, p. 12, 839 So.2d at 214.
This assignment of error has merit and we will remand the case for a new sentencing hearing at which the defendant may present evidence, and the Court will have an opportunity to decide, whether the defendant has shown by clear and convincing evidence that he is an exceptional case as noted in Rice, supra.

ASSIGNMENT OF ERROR NUMBER 3

Through counsel and pro se, defendant contends that the State submitted insufficient evidence at the multiple bill hearing to establish that he was a triple offender on the basis of his conviction for simple burglary in case no. 394-017. Specifically, defendant contends that because the guilty plea form was not signed 11ftby the presiding judge, the evidence was insufficient to establish the constitutionality of his previous conviction.
The Louisiana Supreme Court explained the State’s burden in a multiple bill hearing in State v. Shelton, 621 So.2d 769, 779-780 (La.1993), as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between *260 the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must then weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant’s prior guilty plea was informed and voluntary, and made with an articulate waiver of the three Boykin rights. (Footnotes omitted).
Shelton was incorporated into La. R.S. 15:529.1(D)(l)(b) which states:
The district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information.The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response.
In State v. Jason, 1999-2551 (La.App. 4 Cir. 12/6/00), 779 So.2d 865, the defendant likewise argued that proof of evidence of his previous guilty plea was Ininsufficient because the plea form did not contain the judge’s signature. This court found that under State v. Shelton use of the docket master and the minute entry, which established that the plea was taken in open court, and the plea form which itself acknowledged that the judge had addressed the defendant personally, sufficiently proved that the plea was valid.
The record reflects that the aforementioned guilty plea form was signed by both the defendant and his counsel. The State also introduced the minute entry from the sentencing which reflected that the defendant was represented by counsel. The minute entry also reflected that the court interrogated the defendant as to his constitutional rights, which are specifically identified in the minute entry as well. Here, as in State v. Jason, the evidence was sufficient to establish the existence of the prior guilty plea and that the defendant was represented by counsel. The defendant’s evidence failed to show an infringement of defendant’s rights or a procedural irregularity in the taking of the plea. In sum, the State complied with the requirements of La. R.S. 15:529.1, and the trial court properly determined from the evidence presented that the defendant was a third felony offender. The assignment of error lacks merit.

CONCLUSION

For the reasons stated above we affirm the defendant’s conviction and vacate his sentence under the Habitual Offender Law and remand for a new sentencing hearing in accordance with the views expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.

. If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

. In accordance with La. R.S. 46:1844(W)(l)(a), initials of the victim are used in order to protect her identity.

. La.C.Cr.P. art. 782(A) states in pertinent part that "[c]ases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” The instant case was one in which punishment was necessarily confinement at hard labor.