LEON A. CANNIZZARO, JR., Judge.
|,The defendant, Robert Williams, was sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence after he was convicted under the Habitual Offender Law, La. R.S. 15:529.1, as a third felony offender. He is appealing his sentence on the grounds that it is unconstitutionally excessive.
STATEMENT OF THE CASE
Mr. Williams was charged with one count of distribution of cocaine and with one count of possession with the intent to distribute cocaine. He was charged with violating La. R.S. 40:967(A) on each count. After a jury trial, Mr. Williams was found guilty of both charges. Mr. Williams filed motions to set aside the verdict and for a new trial. Both motions were denied by the trial court. Mr. Williams waived the sentencing delays and was sentenced to thirty years at hard labor. The state then filed a multiple offender bill of information alleging that Mr. Williams had two prior felony convictions. The trial court conducted a hearing on the multiple offender bill of information and adjudicated Mr. Williams a third felony offender. The previously imposed thirty-year sentence was vacated, and the sentence of life imprisonment was imposed under the Habitual Offender Law.
| ¡¡Mr. Williams appealed his convictions and his sentences. This Court affirmed his convictions, but his sentences were vacated. Because the sentencing transcript[1] did not indicate whether or not the original thirty-year sentence was imposed for both of the convictions, the sentence was vacated, and the matter was remanded for re-sentencing. State v. Williams, 00-1233 (La.App. 4 Cir. 4/11/01), 793 So.2d 572, unpub., writ denied, 01-1417 (La.3/28/02), 812 So.2d 646, 795.
At the re-sentencing hearing, Mr. Williams’ counsel moved for a downward departure from the life sentence that was statutorily required by the Habitual Offender Law, but the trial court denied the motion. The trial court then stated that Mr. Williams’ original thirty-year sentence as to the first count on which he was convicted was vacated. The trial court re-sentenced Mr. Williams to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sen *696 tence under the Habitual Offender Law. Mr. Williams was also re-sentenced on the second count on which he was convicted to thirty years at hard labor with credit for time already served. The sentences were to be served concurrently.

STATEMENT OF FACTS

An undercover New Orleans Police Department (“NOPD”) officer, whose unmarked vehicle was equipped with both audio and video recording capabilities, was driving in an area where it was known that street dealers sold narcotics. The ^officer saw Mr. Williams standing on Thalia Street near Simon Bolivar Avenue in New Orleans. The officer waved at Mr. Williams, and he waved back. The officer stopped his vehicle and negotiated a purchase of narcotics from Mr. Williams, who then walked away and spoke with his sister who was standing nearby. Mr. Williams’ sister handed something to him, and he walked back to the undercover officer and opened his hand to reveal three pieces of what appeared to be crack cocaine. The officer bought one of the pieces, took possession of it, and paid Mr. Williams with a ten-dollar bill belonging to the NOPD that had been photocopied so that it could later be identified.
A nearby team of officers working with the undercover officer, the “takedown team,” were notified of the transaction. The takedown team subsequently stopped Mr. Williams and his sister, who were identified by the undercover officer as the persons from whom he had obtained the cocaine. When the takedown team stopped Mr. Williams, he put in his mouth the ten-dollar bill that was given to him by the undercover officer. He was told to spit out the money, which he did. When he spit out the money, he also spit out a powered substance that appeared to the takedown officers to be crack cocaine. The takedown team seized the ten-dollar bill and the substance that was believed to be crack cocaine. Mr. Williams and his sister were arrested. The entire transaction between the undercover officer and Mr. Williams was recorded on videotape and played to the jury at Mr. Williams’ trial.[2] Mr. Williams was convicted of distribution of cocaine and possession of cocaine with the intent to distribute it.

\ .DISCUSSION

Errors Patent

Because this is an appeal from re-sentencing only, a complete review of the record for errors patent is unnecessary. The only errors found in the original appeal related to the defendant’s sentence, which resulted in the remand for re-sentencing. The sentence imposed at the re-sentencing on the first count on which Mr. Williams was convicted is legal, and Mr. Williams was present and represented by counsel at the re-sentencing. As to the re-sentencing on the second count of which Mr. Williams was convicted, the trial court failed to note that the first five years of the sentence for that conviction must be served without the benefit of parole, probation, or suspension of sentence as was required by La. R.S. 40:967 as in effect at the time of the commission of the crime. Because more than five years have elapsed since the conviction and original sentencing in this matter, this error is moot. Furthermore, pursuant to La. R.S. 15:301.1(A)[3], the sentence is deemed to *697 have been imposed with the restriction, even though the trial court failed to specify the restrictions. See also State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799. Therefore, there is no need for this Court to correct the sentence.

Assignments of Error

Assignment of Error No. 1: The statutorily mandated sentence imposed on Mr. Williams is constitutionally excessive and must be reduced.

| ¡¡Mr. Williams argues that the life sentence imposed on him in this case is unconstitutionally excessive. The state legislature amended the Habitual Offender Law after Mr. Williams was convicted, and under the amended statute Mr. Williams would not have been eligible for a life sentence. Therefore, he contends that the amendment to the Habitual Offender Law is evidence that the state legislature has determined that a life sentence in cases such as his is unconstitutionally excessive. Nevertheless, Mr. Williams agrees that the amendments to the Habitual Offender Law are not to be applied retroactively. In fact, the legislation amending the Habitual Offender Law expressly provided that “[t]he provisions of this Act shall only have prospective effect.” Act No. 408, § 6 of the 2001 Regular Session of the Louisiana Legislature.
In State v. Dorthey, 623 So.2d 1276 (La.1993), the Louisiana Supreme Court held that in certain instances a sentence less than the minimum sentence mandated by the Habitual Offender Law might be permitted. Id. at 1280-81. The Supreme Court stated that a punishment is constitutionally excessive if it does not make a measurable contribution to acceptable goals of punishment, if it does nothing more than purposelessly impose pain and suffering, and if it is grossly disproportionate to the severity of the crime being punished. Id.
In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Louisiana Supreme Court established the standard of review to be used in determining whether the trial court properly imposed under the Dorthey case a sentence less than the minimum sentence mandated by the Habitual Offender Law. 709 So.2d at 676. In Johnson the Supreme Court stated that the judiciary should give the legislature’s determination of an appropriate minimum sentence great deference. 1 Jd. If, however, a court determines that a mandatory minimum sentence is excessive in a particular case, the court has the authority to impose a constitutional sentence instead of the minimum mandatory sentence. Id. This authority is granted under La. Const, art. 1, § 20.[4] Id.
In determining whether the minimum mandatory sentence under the Habitual Offender Law is excessive, the sentencing judge must always start with the presumption that the minimum mandatory sentence is constitutional. Id. Only if there is clear and convincing evidence in a particular case that rebuts the presumption of constitutionality may the court depart from the minimum sentence. Id. A trial judge is not permitted to rely solely upon the non-violent nature of the crimes for which a person has been convicted as evidence to justify the rebuttal of the constitutional presumption. Id. Although the non-violence of the offenses should not *698 be discounted, this consideration has already been taken into account by the legislature in enacting the Habitual Offender Law. Id. A sentencing judge may consider a defendant’s record of non-violent offenses in sentencing the defendant under the Habitual Offender Law, but a record of non-violent offenses cannot be the only, or even a major, reason for determining that the mandatory minimum sentence under the Habitual Offender Law is excessive. Id.
The Supreme Court in Johnson stated that the defendant has the burden of proof in rebutting the presumption that the mandatory minimum sentence under the Habitual Offender Law is constitutional. To meet that burden of proof the defendant is required to clearly and convincingly show that “[h]e is exceptional, which in this context means that because of unusual circumstances this defendant |7is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the ease.” Id., citing, State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528 (Plotkin, J., concurring). The Supreme Court has emphasized to sentencing judges that “departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations.” Id. at 677 (emphasis added). See also State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 345.
In State v. Wilson, 01-2815 (La.11/22/02), 836 So.2d 2, the Louisiana Supreme Court stated that the trial judge is vested with broad discretion in sentencing, because the trial judge is in the best position to assess the aggravating and mitigating circumstances present in each case. 836 So.2d at 3. Additionally, in State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Supreme Court stated:
On appellate review of sentence, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 (quoting State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)), cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). For legal sentences imposed within the range provided by the legislature, a trial court abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const, art. I, § 20, i.e., when it imposes “punishment disproportionate to the offense.” State v. Sepulvado, 367 So.2d 762, 767 (La.1979).
In State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, this Court discussed the harshness of mandatory sentences as follows:
|RWhere a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
720 So.2d at 1027-28.
In the instant case, the trial court judge imposed the maximum mandatory sentence, and in doing so he carefully considered the report of a presentenee investigation. At the sentencing hearing, the trial court judge referred to the report and sated that Mr. Williams’ adult criminal history began in 1989, with an arrest on a battery charge. In 1990, he was arrested for possession of stolen property, but the charge was refused by the district attorney’s office. Also in 1990, Mr. Williams *699 was arrested on an armed robbery charge, but the charge was refused, because the victim did not appear for trial. Again in 1990, Mr. Williams was arrested for armed robbery, simple kidnapping, and second degree kidnapping. He pled guilty to simple kidnapping and first-degree robbery, and he received a sentence of three years. Another charge for possession of stolen property was refused.
In 1992, Mr. Williams was again arrested for possession of stolen property and theft, and he pled guilty only to the theft charge. In 1993, Mr. Williams was arrested on a drug charge for the first time, and he pled guilty to possession of cocaine. He received a suspended sentence, but he was arrested in 1994 for distribution of cocaine. He was allowed to plead guilty to a reduced charge of possession of cocaine, and he received a sentence of thirty months. In 1996, Mr. Williams was arrested for possession of cocaine and marijuana, but he was 1 flacquitted by a jury of the cocaine charge. The marijuana charge was refused. In 1997, Mr. Williams was again arrested again for possession of cocaine. That charge resulted in a guilty plea. Mr. Williams was sentenced under the Habitual Offender Law to a sentence of thirty months as a second offender. A related charge of distribution of cocaine was refused. Mr. Williams’ next, and final, arrest was the one involved in the instant case.
The trial court judge noted at the sentencing hearing that the presentence report showed that Mr. Williams had violated both his probation and his parole when they had been granted to him. Thus, Mr. Williams had not taken advantage of the opportunities made available to him.
The trial court judge further noted at the sentencing hearing that Mr. Williams “has a lengthy and extensive criminal history that dates back to him reaching the age of majority.” The judge also stated that the “defendant is a self-confessed substance abuser.” The judge then considered the following language in the presen-tencing investigation report:
The subject has an extensive criminal record. Mr. Williams was first introduced to the criminal justice system at the age of fourteen. Since then, he’s been arrested numerous times and has amassed five felony convictions. He has been supervised on probation and or parole both as a juvenile and as an adult. Mr. Williams did not adjust well while under supervision and continued to feed his drug addiction through criminal activity. The subject is a fifth felony offender, [and] probation is not available to him.
Based on the presentencing report, the trial court judge imposed the mandatory life sentence on Mr. Williams. The judge specifically stated that he did not consider the Dorthey case applicable to Mr. Williams’ case. He said that |in“Dorothy [sic ] must be considered in certain special and limited circumstances” and found that Mr. Williams’ case did not embody those circumstances.
The trial court judge considered the mitigating factors that were presented at Mr. Williams’ sentencing hearing, including the fact that he was addicted to drugs when he committed the crimes for which he was convicted. Nevertheless, the trial court judge did not find that to be a sufficiently mitigating factor to cause the sentence imposed on Mr. Williams to be constitutionally excessive.
Mr. Williams argues that his case is similar to State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, and to State v. Combs, 02-1920 (La.App. 4 Cir. 5/21/03), 848 So.2d 672. In both of these cases, this Court found that the mandatory life sentences that had been imposed pur *700 suant to the Habitual Offender Law were excessive. The facts in those cases, however, are clearly distinguishable from those in the instant case. In the Bums case, this Court found that the defendant’s young age, his father’s support, the nonviolent nature of his five offenses (one conviction each of distribution of cocaine, possession of cocaine with the intent to distribute it, and possession of stolen property and two convictions of possession of cocaine), and his diminished brain function all mitigated in favor of a departure from the mandatory sentencing guidelines. Further, this Court found that the defendant in the Bums case could be rehabilitated. Mr. Williams’ criminal history is far more extensive and violent than that of the defendant in the Bums case.
In the Combs case, this Court found that the defendant’s situation was similar to that of the defendant in the Bums case. In Combs, none of the defendant’s four felony convictions (one conviction each of possession of cocaine, ^possession of cocaine with the intent to distribute it, forgery, and distribution of cocaine) was for a violent crime. The defendant had strong family support, and he had held a job and supported his two sons. There is no evidence in the instant case that the defendant’s family is willing or able to support and assist him, he did not testify that he had a stable work history, and he had been involved in criminal activities since he was fourteen years old. We do not find that Mr. Williams’ situation is analogous to that of the defendant in the Combs case. See also State v. Houston, 03-0854 (La.App. 4 Cir. 10/1/03), 859 So.2d 707; State v. Wilson, 02-0776 (La.App. 4 Cir. 1/22/03), 839 So.2d 206; and State v. Rice, 01-0215 (La. App. 4 Cir. 1/16/02), 807 So.2d 350, where this Court remanded the cases for resen-tencing because the trial court judges had indicated that they had no alternative but to impose life sentences. In the instant case, unlike in the Houston, Wilson, and Rice cases, the trial court judge specifically determined that the mandatory sentence was appropriate, even though Mr. Williams argued to the trial court that the imposition of the mandatory minimum sentence would be constitutionally excessive in his case and even though he was permitted to present evidence to support his position.
We find that the trial court judge did not abuse his discretion in sentencing Mr. Williams to life imprisonment as required by the Habitual Offender Law. This assignment of error has no merit.

Assignment of Error No. 2: Mr. Williams’ thirty year sentence was excessive, because possession of 0.1k grams of cocaine is not the most serious violation of the crime of possession with the intent to distribute cocaine.

In State v. Wilson, 01-2815 (La. App. 4 Cir. 11/22/02), 836 So.2d 2, 4, the Louisiana Supreme Court stated that “[t]he trial judge is vested with broad sentencing discretion because he or she remains in the best position to assess the | ^aggravating and mitigating circumstances presented by each case.” For the reasons set forth above, we do not find that the trial court judge abused his discretion.

Assignment of Error No. 3: As applied to recidivists whose predicate felonies were the direct result of drug addition, La. R.S. 15:529.1 violates the ban on cruel and unusual punishment imposed by U.S. Const, amend. VIII.

Mr. Williams argues that under the ruling of the United States Supreme Court in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), a sentence may not be enhanced under a recidivism statute on the ground that a defendant is a drug addict. We read the *701 Robinson case to hold that it is unconstitutional to punish a person for being a drug addict. In the Robinson case, the defendant had “track marks”[5] on his arms indicating illegal drug use. On that basis and on the basis that the defendant allegedly admitted that he was a drug user, he was convicted under a California statute that made it a crime to “be addicted to the use of narcotics.” 370 U.S. at 660, 82 S.Ct. at 1417. In the instant case, Mr. Williams was not convicted of being addicted to crack cocaine based on his status as a drug addict. Instead, he was convicted of the act of distributing crack cocaine and the act of possessing crack cocaine with the intent to distribute it. He was convicted based on his actions, not his status.
We also note that the Habitual Offender Law has been held to be constitutional in numerous cases. See, e.g., Dorthey, 623 So.2d at 1279, where the Louisiana Supreme Court stated that the Habitual Offender Law “does not punish status and does not on its face impose cruel and unusual punishment.”
113We find that the Habitual Offender Law is not unconstitutional under the provisions of the United States Constitution that prohibit cruel and unusual punishment. This assignment of error is without merit.

Assignment of Error No. ⅛: La. R.S. 15:529.1 violates U.S. Const, amend. VI, because it allows a judge to increase a sentence beyond the statutory maximum without requiring the fact of the prior convictions to be submitted to the jury and proved beyond a reasonable doubt.

Mr. Williams bases this assignment of error on the holding of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We find Mr. Williams’ reliance on Apprendi to be misplaced. The Apprendi case specifically rejected Mr. Williams’ position. The Supreme Court stated that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added). Therefore, we find that this assignment of error is without merit.
CONCLUSION
The sentences imposed on Mr. Williams are not unconstitutionally excessive. His sentences are affirmed.
AFFIRMED.
BELSOME, J., concurs in result.

. The minute entry for the sentencing hearing and the hearing on the multiple offender bill of information states that "COURT SENTENCED DEFENDANT AS TO EACH COUNT INDIVIDUALLY AND CONCURRENTLY TO 30 YEARS...." The minute entry then states that the defendant was found to be a multiple offender and that the trial court vacated "ITS PREVIOUSLY IMPOSED SENTENCE AS TO COUNT 1 ONLY AND RE-SENTENCE [sic] DEFENDANT AS A TRIPLE OFFENDER UNDER ARTICLE 15:529.1 AS TO COUNT 1 ONLY TO LIFE IMPROSMENT [sic]...." If there is a discrepancy between a minute entry and a transcript, the transcript is controlling, however. State v. Short, 94-0233 (La.App. 4 Cir. 5/16/95), 655 So.2d 790.

. Mr. Williams’ sister pled guilty to the charges against her.

. La. R.S. 15:301(A) provides that "[w]hen a criminal statute requires that all or a portion of a sentence imposed for violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions *697 of that statute shall be deemed to contain the provisions relating to the service of that sentence without the benefit of probation, parole, or suspension of sentence.”

. La. Const, art. 1, § 20 provides that ”[n]o law shall subject any person ... to cruel, excessive, or unusual punishment.”

. "Track marks” are areas of the skin where drug addicts have injected drugs. When a series of injections have been made in one area of the skin, the marks made by the needles have the appearance of tracks,