TERRI F. LOVE, Judge.
It The defendant Bobby K. Parker was charged by bill of information with simple burglary in violation of La. R.S. 14:62. Following a jury trial, the defendant was found guilty of the lesser offense of attempted simple burglary. The defendant argues on appeal that he received ineffective assistance of counsel and the trial court abused its discretion in imposing an unconstitutionally excessive sentence. Finding no merit to the issues raised on appeal, we affirm the conviction and sentence.

PROCEDURAL HISTORY

The defendant Bobby K. Parker (“the defendant”) was charged by bill of information with simple burglary in violation of La. R.S. 14:62. The defendant was tried by a jury finding him guilty of the lesser offense of attempted simple burglary. The defendant was later sentenced to five years at hard labor with credit for time served. Thereafter, the State filed a multiple bill against the defendant |awho had prior convictions for simple kidnapping and three counts of simple burglary.[1] The State charged the defendant as a fourth offender.
*368 The defendant filed a motion for new trial and a motion to quash the multiple bill, or in the alternative, a motion for an out of time appeal. In the motion to quash, counsel for the defendant argued that had discovery regarding the defendant’s multiple offender status been provided prior to the trial or at trial, “counsel would have strongly encouraged [the defendant] to take a plea of a lesser sentence when possibly faced with 20 years to life as a multiple offender under La. R.S. 15:529.1 and [the defendant] more than likely would have accepted such a[n] offer rather than risk a possible life sentence.” Both motions were denied by the trial court.
At the multiple bill hearing, the defendant admitted that he was a multiple offender and was sentenced to twelve years at hard labor with credit for time served. The State objected to the sentence and filed a supervisory writ with this court. This court granted the State’s writ application and remanded the matter for resen-tencing with instructions to the trial court to resentence the defendant for a term of “not less than twenty years.”[2] Accordingly, the defendant was sentenced to twenty years at hard labor. This appeal follows.

FACTUAL BACKGROUND

|sThe property owners of 1809 North Broad Street began renovation after the property was damaged during Hurricane Katrina. A close family friend, Ronald Perkins, drove by regularly and stopped in occasionally to check on the property. By October 2009, the second floor was completed and the first floor was gutted. At that time, no one was living in the home.
Ronald Perkins Testimony
Ronald Perkins (“Mr. Perkins”) testified at trial that on October 9, 2009, between 11:30 a.m. and 1:00 p.m., he was driving by 1809 North Broad Street when he looked down the alleyway and noticed boots sticking out of a rear window. He stopped and heard noise coming from the upstairs and noticed that a window was torn out. From the neutral ground, Mr. Perkins tried to call 911, but did not receive an answer. Mr. Perkins then flagged down a passing police vehicle.
Mr. Perkins testified he was in the house three days prior to the incident and also stopped by the house one day prior to the incident to check to see if the grass needed mowing. He testified that on the day prior to the incident, the rear window was not broken.
At trial, Mr. Perkins identified the defendant in court as the individual who was pulled from the house after he flagged down the police car. He also stated that he recognized him because the defendant lived “two doors down” from 1809 North Broad Street. He further testified that no one gave the defendant permission to enter the house.
|4Upon entering the house, Mr. Perkins testified that the house was in disarray; the television in one of the bedrooms was missing; dresser drawers were opened and clothing was “all over the place”; jewelry was missing; and it appeared someone had slept in the bathtub. A cable box and Play Station were also missing.
Officer Hillary Hunt Testimony
Officer Hillary Hunt (“Officer Hunt”) also testified that he responded to a call regarding a residential burglary at 1809 *369 North Broad Street. After arriving, he met with Mr. Perkins, who advised him that he had observed someone climbing through a window. Officer Hunt and his partner approached the residence, at which time Officer Hunt observed the defendant crawling out of a window. Officer Hunt testified that he ordered the defendant to come out and after the defendant emerged, Officer Hunt handcuffed him. Officer Hunter further testified that he observed a 26-inch television set near the window from which the defendant had emerged.
The crime lab took photographs, which were identified by Officer Hunt. No evidence was recovered from the defendant’s person, nor were any fingerprints lifted from the scene.
Michael Schmidt Testimony
Michael Schmidt, one of the joint owners of the house,[3] testified that he knew the defendant as a neighbor, but had not given him permission to enter the house.

¡.ERRORS PATENT

A review of the record reveals no errors patent.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his first assignment of error, the defendant argues that he was denied effective assistance of counsel because the “purported” admission to the multiple bill was not withdrawn after the case was remanded and the previous sentence was vacated. He further alleges that the State’s allegation that he is a quadruple offender relies on a release date from a 1994 conviction that was not proven, and that the defendant’s admission to his quadruple offender status was based upon an understanding that the sentence would be below the statutory minimum.
Generally, the preferred procedure for addressing ineffective assistance of counsel claims is a post-conviction proceeding in the trial court. State v. Watson, 00-1580, p. 4 (La.5/14/02), 817 So.2d 81, 84 (citing State v. Deloch, 380 So.2d 67, 68 (La.1980)). A post-conviction proceeding provides for a full evidentiary hearing to be conducted to explore the issue. Id. (citing State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168, 173; Deloch, supra). Where the appeal record discloses sufficient evidence upon which to make a determination of counsel’s effectiveness, the decision may be made on appeal in the interest of judicial economy. State v. Seiss, 428 So.2d 444, 449 (La.1983).
Additionally, this court acknowledged that a defendant asserting an ineffective assistance of counsel claim must overcome a “sound trial strategy” presumption:
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional | r,assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065. If an alleged error falls “within the ambit of trial strategy,” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). (citations omitted). Moreover, “[wjhile opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of *370 counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987).
State v. Skipper, 11-1346, p. 7 (La.App. 4 Cir. 10/10/12), 101 So.3d 537, 542. This court has further stated that “[i]n order to prevail, a defendant must establish that counsel’s performance was deficient and that the deficiency prejudiced him.” State v. Cavazos, 11-0733, p. 19 (La.App. 4 Cir. 5/16/12), 94 So.3d 870, 883 (quoting Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Counsel’s performance is considered ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
Initially, counsel for the defendant raised objections to the multiple bill in the motion to quash which the trial court denied. The motion complained that the discovery of the documentation of the underlying convictions was not provided timely. Nevertheless, counsel for the defendant allowed him to admit to being a fourth offender without first requiring the State to prove that the ten-year cleansing period under La. R.S. 15:529.1(C)[4] had not expired in addition to the supporting documents on all the convictions.
|7The defendant argues on appeal that his counsel failed to pursue the objections when the case was remanded for resen-tencing. The defendant concedes that there were no promises made for an exact sentence, but insists that the guilty plea was made with the understanding that the sentence imposed would be below the statutory minimum. The defendant further contends that his counsel had not adequately determined the strength of the State’s evidence relating to his quadruple offender status; that the sentence he understood he would receive was not lawfully possible; and that the defendant did not understand the consequences for his admission as a quadruple offender. As a result, the defendant argues, his counsel erred by not requesting the trial court to allow him to withdraw the admission to the multiple bill, thereby requiring the State to meet the burden of proving the ten-year lapse from the most recent prior conviction pursuant to La. R.S. 15:529.1(C). Specifically, the defendant avers that the State failed to prove that he was still incarcerated for the 1994 conviction on October 9, 1999, and that his counsel was therefore ineffective.
In suppoi't of his ineffective assistance of counsel claim, the defendant relies in part upon Padilla v. Kentucky, 559 U.S. 356, -, 130 S.Ct. 1473, 1483-84, 176 L.Ed.2d 284 (2010), wherein the Supreme Court held that because counsel for the defendant failed to inform the defendant, who had been a lawful permanent resident of the United States for over forty years, that *371 his plea of guilty made him |8subject to automatic deportation, the defendant established that his counsel was incompetent to satisfy the first prong of Strickland,[5] The defendant relies upon the Court’s language that “the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel.” Padilla, 559 U.S. at -, 130 S.Ct. at 1486.
The defendant also cites to Lafler v. Cooper and Missouri v. Frye, two post-Padilla opinions the Supreme Court issued. Lafler, — U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) and Frye, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Like Padilla, in Frye the Supreme Court recognized at the outset that “[i]t is well settled that the right to the effective assistance of counsel applies to certain steps before trial.” Frye, — U.S. at -, 132 S.Ct. at 1405. In Frye, defense counsel “did not inform the defendant of the plea offer; and after the offer lapsed the defendant still pleaded guilty, but on more severe terms.” Lafler, — U.S. at -, 132 S.Ct at 1383.
In Lafler, the Court likewise acknowledged that “[defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.” Id., — U.S. at -, 132 S.Ct. at 1384. The Lafler Court noted that to establish prejudice under Strickland, “a defendant ‘must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id., — U.S. at -, 132 S.Ct. at 1394 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). In addition, “a defendant must show the outcome of the plea process would have been different with | competent advice.” Id., — U.S. at -, 132 S.Ct. at 1384 (citing Frye at 1388-89, 132 S.Ct. at 1399).
In Lafler, the defendant was informed of the favorable plea offer, but on advice of counsel, he rejected it. Id., — U.S. at -, 132 S.Ct. at 1383. After the trial, the jury returned a guilty verdict, and the defendant received a harsher sentence than the one offered in the rejected plea bargain. Id. The Lafler Court acknowledged that “all parties agree[d] [that] the performance of respondent’s counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial.” Id., — U.S. at -, 132 S.Ct. at 1384. Accordingly, the Court proceeded directly to Strickland’s prejudice test. The Court determined that a defendant has a right to effective assistance of counsel in considering whether to accept a plea bargain, and “[i]f that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more sevére sentence.” Id., — U.S. at -, 132 S.Ct. at 1387. The Court held that as all parties agreed that the defendant’s counsel’s performance was deficient, the defendant was prejudiced by his counsel’s advice to reject the plea offer and proceed to trial. Id., — U.S. at -, 132 S.Ct. at 1389. The Court concluded that “[t]he correct remedy in these circumstances ... is to order the State to reoffer the plea agreement.” Id., — U.S. at -, 132 S.Ct. at 1391.
In the present case, the State argues that the defendant has failed to point to any evidence to support the argument that defense counsel’s inaction constitutes ineffective assistance of counsel. Although the defendant argues his counsel did not insist on documentation from the State to *372 confirm that his 1994 kidnapping conviction fell within the ten-year period, the State argues that the defendant | ^testified at the multiple bill hearing that all three prior convictions “linked up” to his attempted simple burglary conviction. Additionally, the State argues that the defendant expressly waived the right to require the State to prove that the predicate convictions dating back to 1983, 1988, and 1994 fell within the ten-year period, citing the defendant’s testimony at the multiple bill hearing.
Furthermore, the State contends that the defendant has not alleged that the 1994 conviction was in fact outside the ten-year period; and therefore, the defendant failed to establish any prejudice suffered as a result of the alleged ineffective assistance of counsel.
Pursuant to Padilla, Lafler, and Frye, supra, the Sixth Amendment right to effective assistance of counsel applies to the plea bargaining process. Considering first whether the defendant’s counsel was ineffective under Strickland, we must “determine whether counsel’s representation ‘fell below an objective standard of reasonableness.’ ” Padilla, — U.S. at -, 130 S.Ct. at 1482 (quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2052).
Here, the defendant indicated in open court that he fully understood the consequences of admitting to the prior convictions. Specifically, the defendant advised the court that he understood he was giving up “the right to force the district attorney to prove that [he was] one in the same individual with those prior felonies that link up.” The defendant was also advised by counsel of any risk of admitting to the prior convictions at the multiple bill hearing, evidenced by his answer in the affirmative when asked by the court whether he had gone over “everything” with his attorney.[6]
|n Moreover, the defendant signed and initialed a “Waiver of Rights-Plea of Guilty Multiple Offender — La. R.S. 15:529.1” form. In that document, the defendant indicated that he understood his right to have a hearing and to force the district attorney to prove that he was one in the same individual with the prior felony record; that he had the right to remain silent at the hearing and not have that silence held against him; that he understood the sentencing range for three prior felonies was twenty years to life; that he was satisfied with his attorney and the trial court in explaining the consequences of the guilty plea; and that he understood all of the possible legal consequences of pleading guilty.
In light of the fact that the defendant signed the waiver of rights form and indicated to the court on the record that he had discussed everything with his attorney and that he was aware he was giving up the right to force the state to prove his multiple offender status, we find the defendant’s argument that he did not understand the consequences of his admission to the multiple bill or that the risks of doing so were not communicated to him by counsel lacks merit. See State v. Chirlow, 99-14, pp. 8-9 (La.App. 5 Cir. 6/1/99), 738 So.2d 679, 684.
Having determined that the defendant’s counsel was not ineffective, this *373 court need not reach the issue of whether “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2052. In any event, however, the defendant has neither alleged nor demonstrated for this court that the 1994 conviction was outside the ten-year cleansing period. Accordingly, we find that even if the defendant had established that his counsel was deficient, the defendant 112has failed to establish that he was prejudiced by the alleged ineffective assistance of counsel.

EXCESSIVE SENTENCE

The defendant also alleges that the sentence imposed by the trial court was unconstitutionally excessive. In determining whether the sentence imposed by a trial court was unconstitutionally excessive, the Louisiana Supreme Court has previously held:
The pertinent question on appellate review is “whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.” State v. Humphrey, 445 So.2d 1155, 1165 (La.1984); see also State v. Taves, 03-0518, p. 4 (La.12/3/03), 861 So.2d 144, 147 (per curiam)(collecting cases). A trial court “abuses its discretion only when it contravenes the prohibition of excessive punishment in La. Const. art. I, § 20, i.e., when it imposes ‘punishment disproportionate to the offense.’ ” State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608 (quoting State v. Sepulvado, 367 So.2d 762, 767 (La.1979)). In making that determination, “we must consider the punishment and the crime in light of the harm to society caused by its commission and determine whether the penalty is so disproportionate to the crime committed as to shock our sense of justice.” State v. Bonanno, 384 So.2d 355, 358 (La.1980).
State v. Colvin, 11-1040, p.7 (La.3/13/12), 85 So.3d 663, 667-68, cert. denied, — U.S. -, 133 S.Ct. 274, 184 L.Ed.2d 162 (2012); See also State v. Wilson, 11-0960, pp. 10-11 (La.App. 4 Cir. 9/5/12), 99 So.3d 1067, 1074 (“A trial judge has broad discretion to sentence within statutory limits and under the standard just recently articulated by the Louisiana Supreme Court in Colvin, a trial court ‘abuses its discretion only when it ... imposes punishment disproportionate to the offense.’”) (quoting Colvin, 11-1040, p. 7, 85 So.3d at 668).
Additionally, when reviewing a claim of excessive sentence, an appellate court must determine whether the trial court adequately complied with the statutory | ^guidelines in La.C.Cr.P. Art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry, 03-1671, pp. 8-9 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239-40. Likewise,
“[i]t is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. A court may only depart from the mandatory sentence if it finds clear and convincing evidence in the present case that would rebut the presumption of constitutionality. Id. To merit a deviation below the mandatory minimum sentence, the defendant must clearly and convincingly show that he is exceptional. State v. Johnson, supra. Such downward departures should occur only in rare instances. Id.”
State v. Douglas, 06-0319, pp. 5-6 (La.App. 4 Cir. 2/14/07), 952 So.2d 793, 797 (quoting State v. Robert, 05-1315, pp. 3-4 (La.App. 4 Cir. 5/31/06), 931 So.2d 1268, 1271).
*374 The State submits that a conviction for attempted simple burglary carries a maximum sentence of six years at hard labor pursuant to La. R.S. 14:27(D)(3)[7] and 14:62(B)[8]. Under the Habitual Offender Law, the penalty for a fourth felony offender is imprisonment “for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.” La. R.S. 15:529.1(A)(4)(a). Pursuant to this statute, the defendant faced a sentencing range of twenty years to life. The trial court in this case imposed the mandatory minimum sentence.
|i4A mandatory minimum sentence may nevertheless be considered constitutionally excessive. The Louisiana Supreme Court has recognized that although “it is apparent that the Legislature’s determination of an appropriate minimum sentence should be afforded great deference by the judiciary,” it is well-settled that “courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature.” State v. Johnson, 97-1906, p. 6 (La.3/4/98), 709 So.2d 672, 676.
The Johnson court expounded on the factors to consider when determining whether a defendant’s minimum sentence is excessive:
The issue for this Court is to determine under what rare circumstances a sentencing court should exercise its authority to declare excessive a minimum sentence mandated by the Habitual Offender Law.
In State v. Dorthey, [623 So.2d 1276 (La.1993) ], this Court held that a trial court must reduce a defendant’s sentence to one not constitutionally excessive if the trial court finds that the sentence mandated by the Habitual Offender Law “makes no measurable contribution to acceptable goals of punishment”, or is nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime.” Id. at 1280-81. Finding a mandatory minimum sentence constitutionally excessive requires much more, though, than the mere utterance of the phrases above.
[[Image here]]
[Furthermore,]
A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant’s instant or pri- or offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders ... Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sen *375 tences, while those who do not are allowed lesser sentences. So while a defendant’s record of non-violent offenses may |, splay a role in a sentencing judge’s determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.
Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case, [quoting [State v.] Young, 94-1636 at pp. 5-6 [ (La.App. 4 Cir. 10/26/95)], 663 So.2d [525] at 528 (Plotkin, J., concurring) ].
Johnson, 97-1906 at pp. 4-8, 709 So.2d at 676.
Additionally, we have previously acknowledged that:
[w]here a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
State v. Williams, 05-0176, p. 8 (La.App. 4 Cir. 5/3/06), 932 So.2d 693, 698 (quoting State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, 1027-28).
The defendant argues that 1809 North Broad Street was “gutted and unoccupied” at the time of the offense. He also contends that he was removed from the property by the police; he did not have any tools or property from the house; and that he did not have any injuries from broken glass. The defendant further argues that the property missing from the house was not in the defendant’s possession. While acknowledging that his entry was unauthorized, the defendant contends that there was no evidence that the burglary in this case was “particularly heinous.” In addition, he argues that at forty-five years old, a twenty year sentence |1fiwill serve no purpose because he “will be locked up during the years of his like [sic] when he is less likely to commit serious crimes and more likely to require high cost care, due to his age.” Accordingly, the defendant argues that the twenty year sentence for attempted simple burglary is excessive.
In the present case, the trial court considered mitigating factors pursuant to La. C.Cr.P. Art. 894.1 in imposing the initial sentence and the subsequent twelve year sentence on the multiple bill. Namely, the trial court considered the fact that the house was a “[Hurricane] Katrina flooded, unoccupied house.” However, the defendant avers that the trial court was forced to impose the twenty year sentence. Thus, he argues, the trial court could give no reasons prior to imposing the twenty year sentence in accordance with La. C.Cr.P. Art. 894.1.
Despite the defendant’s contentions, the defendant faced a sentencing range of twenty years to life as a fourth felony offender. The trial court, accordingly, sentenced him to the mandatory minimum sentence. A court may only depart from the minimum sentence if there is clear and convincing evidence that rebuts the presumption of constitutionality, the burden of proof that the defendant carries.
A review of the record indicates that the non-violent nature of the defendant’s offenses is a leading reason for the defen *376 dant’s assertion that the twenty year sentence is excessive. Louisiana jurisprudence, however, directs this court to find that in order to rebut the presumption of constitutionality of the mandatory minimum sentence, the non-violent nature of the offenses must not be the only or even the leading reason for the defendant’s assertion that the imposed sentence is excessive. In this case, while a twenty year sentence for attempted simple burglary is harsh, the defendant has failed to make a showing by clear and convincing evidence that he is exceptional to require a downward departure from 117the mandatory minimum under the current facts and circumstances. Therefore, we do not find the sentence was unconstitutionally excessive.

DECREE

For the foregoing reasons, we find no merit to defendant’s claims that he received ineffective assistance of counsel and that the trial court abused its discretion in imposing an unconstitutionally excessive sentence. Therefore, we affirm the conviction and sentence.
AFFIRMED

. The predicate offenses listed on the multiple bill, all from Orleans Parish Criminal District Court, are a plea of guilty to kidnapping on June 30, 1994; a plea of guilty as charged to *368 two counts of simple burglary on June 19, 1988; and a plea of guilty to simple burglary on January 26, 1983.

. State v. Parker, 2011-1654 (La.App. 4 Cir. 12/20/11), unpub.

. Mr. Schmidt testified that his mother owned the house, and after inheriting it, he co-owned the house with five other siblings.

. La. R.S. 15:529.1(0) provides:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.

. The Court did not reach the issue of whether the defendant was prejudiced by his incompetent counsel. Padilla, 559 U.S. at -, 130 S.Ct. at 1478.

. During the sentencing colloquy, the defendant answered in the affirmative when asked if he was admitting to being a "four-time offender ... having at least three prior felony convictions ... that link up since 1983”, when asked if he understood that the range as a "four-time offender as entered into then becomes twenty years to life”, when asked if he understood all the legal consequences of entering a plea as a "four-time offender”, and when asked if he had "gone over everything with [his] attorney.”

. La. R.S. 14:27(D)(3) provides:
D. Whoever attempts to commit any crime shall be punished as follows:
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.

. La. R.S. 14:62(B) provides:
B. Whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.